**WOLVERINE EXPLORATION COMPANY, Geodyne Production Company, Conquest Exploration Company, Graham Royalties, Ltd., M.B. Rudman, Asher Resources, Okmar Oil Company, Sheldon Beren, Robert M. Beren, and Duer Wagner, Jr., Appellees,**

v.

**NATURAL GAS PIPELINE COMPANY OF AMERICA INC., Defendant,**

**and**

**Texaco, Inc., Appellant.**

**No. 74246.**

Court of Appeals of Oklahoma, Division No. 1.

Dec. 10, 1991.

Rehearings Denied June 8, 1992.

Certiorari Denied Nov. 17, 1992.

Glen M. Boudreaux, Tim S. Leonard, David Scott Curcio, Kevin M. McCormack, Kirklin, Boudreaux & Leonard, Houston, Tex., and Robert K. Pezold, Brian R. Huddleston, Brune, Pezold, Richey & Lewis, Tulsa, for appellees.

Joseph W. Morris, Teresa B. Adwan, Theodore Q. Eliot, M. Benjamin Singletary, Patricia Ledvina Himes, Gable & Gotwals, Tulsa, for appellant.

## MEMORANDUM OPINION

ADAMS, Judge:

This is an appeal from an order denying a motion to compel arbitration, and is authorized by 15 O.S.1981 § 817(A). Texaco, Inc. appeals two trial court orders. One order denied arbitration of some claims under a Gas Purchase Contract (GPC) and a tort claim arising out of performance of the GPC, and a second order compelled arbitration of other claims but limited the scope of arbitration.

The central issue is the effect of an arbitration clause in the GPC which compelled arbitration in disputes as to "price" and "reserve determinations to be agreed to by the parties". We conclude the trial court correctly applied this provision in dealing with the tort claim but erred in denying arbitration for the remaining claims which we find to be "price" disputes covered by the arbitration clause.

## THE CONTRACT

By a Gas Purchase Contract (GPC) executed in December 1979 by Texaco as Buyer and Appellees' (collectively, Wolverine) predecessors in interest as Seller, Texaco agreed to pay for and receive, and pay for if available and not taken, certain amounts of gas produced by Seller. Article Fourth of the GPC set the price of the gas for which Texaco was obligated to pay, setting the price in terms of the amount to be paid for each one million British Thermal Units (BTU's) of natural gas. The manner in which the price was set differed, depending upon the existence of government price regulation.

Paragraph 2 of Article Fourth provided for determining the price in a decontrolled market, and is applicable to this dispute. Under its provisions, the Buyer and Seller were to agree on a price based upon a comparison with other GPC's under guidelines in the GPC. If the Buyer and Seller could not agree timely, either party was allowed to "submit the matter for arbitration, the procedures for such arbitration to be set forth in Article Fifteenth of this Contract." This statement is the only reference to arbitration in Article Fourth.

Article Fourth also included Paragraph 3 which provided:

Notwithstanding any other provision of this Article Fourth to the contrary, it is understood and agreed that Buyer shall never be obligated to pay seller for gas delivered hereunder, or for which Buyer is obligated to pay for, any price greater or lesser than the price received by Buyer for such gas pursuant to the terms of that certain contract dated December 26, 1979, between Texaco, Inc., "Seller" and Natural Gas Pipeline Company of America, "Pipeline".

As to the non-tort claims, the effect of Paragraph 3 is essentially the issue which Texaco wanted arbitrated and on which the trial court rejected arbitration. The "price" disputes as to which arbitration was rejected all concerned only the effect of Paragraph 3, and the trial court limited arbitration on the other disputes to determining price under paragraph 2 and excluded any arbitrator consideration of Paragraph 3.

Article Fifteenth provided for arbitration and the procedures for disputes "regarding the provisions relating to 'price' in Article Fourth hereof or a dispute concerning reserve determinations to be agreed to by the parties hereto."

## APPLICABLE LEGAL PRINCIPLES

■ Texaco cites *Voss v. City of Oklahoma City*, 618 P.2d 925 (Okla.1980) for the axiom that the law generally favors arbitration of disputes. However an agreement for the submission of an issue to arbitrators is a prerequisite. The court is

generally limited to ascertaining whether a party is making a claim which is governed by the contract. *Voss* at 928. We therefore must examine the GPC to determine whether the parties agreed to submit the disputes in issue to arbitration.

In making that determination, both parties have encouraged us to look to federal case law under statutory arbitration provisions similar to Oklahoma's. Of those cases, we find *Chevron U.S.A., Inc., v. Consolidated Edison Company of New York, Inc.*, 872 F.2d 534 (2nd Cir.1989) to be most instructive. In addressing the problem of the "scope of arbitrable issues" and interpreting a narrowly drawn arbitration clause, as we do in this case, the court first recognized the presumption in favor of arbitration. However, in cases involving narrowly drawn clauses, the court determined the presumption was "constrained" by the language of the contract. The court capsulized the effect of this constraint by stating:

> Thus, even though a narrow arbitration clause must be construed in light of the presumption in favor of arbitration, the court is not free to disregard the explicit boundaries set by the agreement between the parties.

*Chevron,* 872 F.2d, at 537–538.

Applying this principle to the GPC we must determine whether either of these disputes is "on its face within the purview of the [arbitration] clause." *Rochdale Village, Inc. v. Public Service Employees Union*, 605 F.2d 1290, 1295 (2d Cir.1979). If we determine the agreement's "explicit boundaries" include a dispute as an arbitrable issue, the presumption will apply, and arbitration must be ordered. On the other hand, if the dispute does not fall within the boundaries set by the agreement, the presumption cannot serve to place it there.

## LEGAL PRINCIPLES APPLIED

■ As noted previously, in Paragraph 2 of Article Fourth the parties agreed to arbitrate disputes concerning the "price" to be set under that paragraph, and this "price" dispute, i.e., the application of Paragraph 3 of Article Fourth, does not

fall within the boundaries of that agreement. However, in Article Fifteenth, the parties also agreed to arbitrate any dispute "regarding the provisions relating to price in Article Fourth". Using the ordinary meaning of those words it is not unreasonable to conclude this agreement included a dispute regarding a "provision" in Article Fourth which related to or affected "price", Paragraph 3.

There is no language in Article Fifteenth which excludes any provision of Article Fourth from the arbitration agreement or consideration by the arbitrators. Applying the presumption in favor of arbitration does no violence to the parties agreement, and the trial court erred in refusing arbitration for some Article Fourth pricing claims and restricting the arbitrators consideration in others.

■ However, the trial court did not err in refusing arbitration of the tort claim. Apparently because determining the amount of "reservoir damage" will inevitably require a "reserve determination", Texaco argues the parties agreed to arbitrate this claim in Article Fifteenth. The language of the agreement negates this conclusion. By explicit language, the parties agreed only to arbitrate "disputes concerning reserve determinations *to be agreed to by the parties hereto."* (Emphasis added)

Texaco has not identified, nor have we discovered, any GPC provision by which the parties contemplated agreeing on any "reserve determination", much less a "reserve determination" as part of determining reservoir damage caused by Texaco's alleged negligence. Appellees' tort claim for "reservoir damage" does not fall within the explicit boundaries of the arbitration agreement, and we cannot use a presumption favoring arbitration to expand those boundaries.

## CONCLUSION

All Appellees' claims arising under Article Fourth of the GPC are subject to arbitration, and the arbitrators should consider any dispute regarding any provision relating to "price" in Article Four. The trial

court erred in refusing to order arbitration for all of those claims and in limiting the issues on the claims ordered arbitrated. Appellees' reservoir damage claim is not arbitrable, and the trial court properly refused to order arbitration.

The trial court's order refusing arbitration on the Article Fourth claims and instructing the arbitrators to disregard Paragraph 3 of Article Fourth is reversed. The trial court's order refusing arbitration for the reservoir damage claim is affirmed. The case is remanded with instructions to the trial court to compel arbitration of all claims arising under Article Fourth and to delete any instruction to the arbitrators limiting their consideration of all the provisions of Article Fourth. In all other respects, the trial court shall proceed as provided by law.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS

GARRETT, P.J., and BAILEY, J., concur.