2000 OK CIV APP 26

Wanda M. LEWIS, Administratrix and Personal Representative of the Estate of Richard E. Lewis, deceased, Plaintiff/Appellant,

v.

CENTRAL OKLAHOMA MEDICAL GROUP, INC., an Oklahoma professional corporation, d/b/a COMG, Defendant,

Prudential Health Care Plan, Inc., a Texas corporation, d/b/a Prucare of Oklahoma; Prudential Health Care Plan, Inc., d/b/a Prucare, a subsidiary of The Prudential Insurance Company of America, a New Jersey corporation, Defendants/Appellees.

No. 92,951.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 5, 1999.

Certiorari Denied Feb. 2, 2000.

As Corrected March 9, 2000.

Howard K. Berry, Jr., Oklahoma City, Oklahoma, For Appellant.

Arlen Fielden, Kevin D. Gordon, Oklahoma City, Oklahoma, For Appellees.

OPINION

CARL B. JONES, Chief Judge:

¶ 1 This matter is a medical malpractice case in which Appellant Wanda Lewis alleged that her husband, Richard E. Lewis, died from his physicians' failure to diagnose a lesion in Mr. Lewis' rectum. Originally, this action was brought against the physicians, their employer Central Oklahoma Medical Group (COMG), Appellee Prudential Health Care Plan, Inc. (PruCare) and Appellee The Prudential Insurance Company of America (Prudential). Initially, the wife dismissed the physicians without prejudice because COMG admitted in discovery that the physicians were their employees. According to the judgment entered in this case, the wife dismissed the physicians and COMG with prejudice on October 27, 1998.

¶ 2 Mr. and Mrs. Lewis received their HMO membership in PruCare through the wife's employer, implicating the preemption doctrine under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001–1461 (ERISA). PruCare filed a declaratory action in federal court. On June 19,1995, the district court granted PruCare summary judgment in part, finding that only vicarious liability claims against PruCare survive preemption. This was affirmed by the Tenth Circuit Court of Appeals. In the trial court, the parties stipulated in the Pretrial Order that the issue of ostensible agency/apparent authority was the only claim of liability asserted against Prudential and PruCare.

¶ 3 PruCare and Prudential filed motions for summary judgment asserting that the physicians in question were independent contractors and not agents of PruCare or Prudential. The trial court found that the decedent reasonably could not believe that the physicians employed by COMG were agents of PruCare or Prudential. Additionally, the trial court found that the PruCare Certificate of Coverage, which the decedent received before his medical treatment, adequately explained that the health care providers were independent contractors and not agents. The wife appeals.

¶4 PruCare and Prudential filed a Motion to Dismiss this appeal on the basis that the appeal is moot because of the wife's dismissal with prejudice of COMG and the physicians. Relying on *Barsh v. Mullins,* 1959 OK 2, 338 P.2d 845, PruCare and Prudential assert that the release of the purported agent, here COMG and the physicians, exonerates PruCare and Prudential from liability in tort. *Barsh* was decided before the amendment in 1980 to the Uniform Contribution Among Tortfeasors Act, 12 O.S.1991 § 832. Section 832(H)(1) determines when a release will discharge from liability tortfeasors who are not parties to the release and it provides:

"H. When a release, covenant not to sue or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

1. It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater"; [1]

To discharge non-settling tortfeasors potentially liable for the same injury, the release must name or otherwise specifically identify the non-settling tortfeasors. As correctly argued by Lewis, neither the release nor the dismissals with prejudice are provided in the record for this Court to review and determine whether the release of the alleged agents, the physicians and COMG, also released Prudential and PruCare. The party seeking relief from the appellate court bears the burden of obtaining a record sufficient to support the corrective relief sought. *Depuy v. Hoeme,* 1989 OK 42, ¶8, 775 P.2d 1339, 1343.

¶5 Prudential and PruCare also argue in their Motion to Dismiss this appeal that because no liability can now be found against the released physicians and COMG then no derivative liability can be found against Prudential and PruCare. The Oklahoma Supreme Court addressed this issue in *Cox v. Kansas City Life Ins. Co.,* 1997 OK 122, 957 P.2d 1181, where it reviewed cases involving negligence actions between master/servant and principal/agent. The Court found that a plaintiff may bring separate actions against a principal and his agent, to recover for the negligence of the agent, even where the principal's only responsibility is derivative. In addition, the Court noted that it had upheld a judgment against an employer despite the fact no judgment had been entered against the employee, based upon the rationale expressed. Accordingly, Prudential and PruCare's Motion to Dismiss is denied; however, on remand, the trial court may construe the language of any release given to the physicians and COMG and determine the applicability of such release pursuant to 12 O.S.1991 §. 832.

¶6 The dispositive issue presented in this summary disposition review is whether the trial court erred in finding that the decedent, as a matter of law, reasonably could not have believed that the physicians employed by COMG were agents of PruCare or Prudential. Summary judgment is proper only when the pleadings, affidavits, depositions, or other evidentiary materials establish that there is no genuine issue regarding any material fact, and that the moving party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, all inferences and conclusions drawn from the evidence must be viewed in a light most favorable to the party opposing the motion for summary judgment. *Shelley v. Kiwash Electric Coop. Inc.,* 1996 OK 44, ¶15, 914 P.2d 669, 674.

¶7 To establish apparent authority, a plaintiff must show: 1) such authority as the principal knowingly permits the agent to assume or which it holds the agent out as possessing; 2) reliance thereon by the plaintiff; and, 3) change of position by plaintiff to her detriment. *Sparks Bros. v. Texas Moran Exploration,* 1991 OK 129, ¶17, 829 P.2d 951, 954. Lewis contends that Prudential

---

1. 12 O.S. Supp. 1995 § 832(H)(1) was amended and in pertinent part provides: "It does not discharge any other tortfeasor from liability for the injury or wrongful death unless the other tortfeasor is specifically named; ..."

and PruCare held out the physicians of COMG as their doctors and Lewis relied on the assurances of Prudential and PruCare in choosing her HMO to her detriment. Lewis relying on *Smith v. St. Francis Hosp.*, 1983 OK CIV APP 58, 676 P.2d 279, avers that the physicians and COMG were ostensible agents of Prudential and PruCare. The hospital in *Smith* was estopped from denying responsibility for the negligence of its emergency room physicians. The court, assuming that the emergency room physicians were independent contractors, reached the conclusion that the hospital held itself out to the public as rendering medical care and that patients reasonably relied on the hospital's representation that the treating doctors were acting for the hospital. The critical factor used to establish hospital liability on this ostensible agency theory was the absence of a pre-existing doctor-patient relationship. Despite the doctor's status as an independent contractor, the hospital was estopped from denying liability because the patient looked solely to the hospital to provide medical personnel and not as the situs where his physician would treat him for his medical problems.

¶ 8 Lewis testified in her affidavit that she and her husband believed the physicians were PruCare physicians and that they looked to PruCare for their medical care. In support of this, Lewis stated that prior to enrolling with the PruCare group health insurance policy, neither she nor her husband had ever been treated by the physicians in question. In fact, PruCare assigned the Lewis' primary care physician and the subsequent physicians were selected by the primary care physician. Additionally, Lewis averred that to make an appointment she would call the PruCare telephone number listed in the telephone directory which she demonstrated was the same telephone number for COMG by attaching pages from the telephone directory. She also testified that when she and her husband went for their appointments, the building directory listed the medical offices as PruCare medical offices. Photographs of the directories were attached as exhibits to Lewis' brief in the court below.

¶ 9 Lewis also provided evidence through the physician who formed COMG that he was recruited by PruCare to aid it in establishing an HMO in Oklahoma. PruCare requested that the physician either establish a medical group or find an existing medical group suitable to accommodate PruCare enrollees. The physician formed COMG and PruCare agreed to pay the expenses of COMG, including but not limited to salaries, medical supplies, telephone, nondepreciable equipment, maintenance of facilities and equipment, administrative supplies, insurance, including professional malpractice insurance, employee benefits and professional fees, including accounting, legal expenses and health care services, service expenses incurred in the ordinary course of business. The physician testified that all of the startup money for COMG came from PruCare. In addition, the medical director of COMG was also a medical director for PruCare.

¶ 10 PruCare argues that the Certificate of Group Health Care Coverage expressly states that the relationship between COMG and the decedent's physicians was that of an independent contractor. PruCare argues that *Smith* is distinguishable because the location where an emergency room physician practices is a physical part of the hospital that cannot be separated. Here, PruCare argues it did not share the same name with COMG or the physicians, its offices were physically separated and they provided distinctly different services. Further, PruCare asserts COMG did not just treat PruCare enrollees, but COMG treated non-PruCare patients as well. Finally, PruCare asserts that it is disputed that the signs allegedly relied upon at the clinics were in place at the time of decedent's treatment. However, it does concede that PruCare is the owner of the buildings in which COMG is also a tenant and that PruCare also offices in those same buildings.

¶ 11 Agency is generally a question of fact which must be determined by the trier of fact. *A–Plus Janitorial v. Employers' WCA*, 1997 OK 37, ¶ 32, 936 P.2d 916, 930. As outlined above, the existence of apparent authority/ostensible authority is disputed. The question of COMG and the physician's status

with PruCare must be determined by the trier of fact.

¶ 12 Prudential contends that it is not vicariously liable for any negligence of its subsidiary PruCare because PruCare is an independent entity from Prudential with a different purpose. Prudential is a mutual insurance company while PruCare is a health maintenance organization. The Oklahoma Supreme Court in *Oliver v. Farmers Ins. Group*, 1997 OK 71, ¶ 8, 941 P.2d 985, 987 addressed the factors to be considered in determining whether one corporation is simply the instrumentality of another corporation and should be treated as one corporation for the purpose of tort law. The Court listed ten factors to be considered are: 1) the parent corporation owns most or all of the stock; 2) the corporations have common officers or directors; 3) the parent provides financing to the subsidiary; 4) the dominant corporation subscribes to all the other's stock; 5) the subordinate corporation is under capitalized; 6) the parent pays the salaries, expenses or losses of the subsidiary; 7) a great deal of business is with parent corporation or assets of the former were conveyed to the other corporation; 8) the parent refers to the subsidiary as a division or department; 9) the subsidiary follows directions from the parent's officers or directors; 10) legal formalities for keeping the entities separate are observed. The Court further noted that commonality of purpose between the corporations should also be considered.

¶ 13 Lewis provided supporting documentation that one of Prudential's Board of Directors was the business executive for PruCare. Additionally, the executive director of PruCare in 1992 testified that his overseer was employed by Prudential and that Prudential paid the executive director's salary. In fact, the executive director testified that he considered himself an employee of Prudential. Prudential also paid the administrative, support services, and debt payments for PruCare. Prudential provided an affidavit from its Chief Legal Officer in which she avers that there are no common board members between Prudential and PruCare; PruCare pays its employees' salaries; and, PruCare is adequately capitalized. Clearly, we are presented with conflicting evidentiary material regarding the status of Prudential; however, the inference is presented through this evidence that Prudential is related to and involved in the operations of PruCare. Whether Prudential has adequate control of PruCare and ultimately vicariously liable for negligence, if any, of Prucare is a determination for the trier of fact. Accordingly, this matter is reversed and remanded.

¶ 14 REVERSED AND REMANDED.

¶ 15 HANSEN, P.J., concurs; ADAMS, J., dissents.