2007 OK CIV APP 40

**John GISH, Plaintiff/Appellee/Counter–Appellant,**

**v.**

**ECI SERVICES OF OKLAHOMA, INC., a subsidiary of Equity Corporation International of Texas, now known as SCI Oklahoma Funeral Services, Inc., Defendant/Appellant/Counter–Appellee.**

**Nos. 102,309, 102,861.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 21, 2006.

Rehearing Denied Jan. 23, 2007.

Certiorari Denied April 30, 2007.

---

✆236(1)

Jack S. Dawson, Holly Hillerman, Miller Dollarhide, Oklahoma City, OK, for Defendant/Appellant.

John P. Zelbst, Chandra L. Holmes Ray, John P. Zelbst Law Firm, Lawton, OK, for Plaintiff/Appellee.

LARRY JOPLIN, Judge.

¶1 Appellant seeks review of the order of the trial court denying a Motion for New Trial/Remittiter and Judgment Not Withstanding the Verdict (JNOV) filed by Defendant/Appellant ECI Services of Oklahoma, Inc., a subsidiary of Equity Corporation International of Texas now known as SCI Oklahoma Funeral Services, Inc. (ECI) after entry of a $4.5 million jury verdict in favor of Plaintiff/Appellee John Gish (Gish) on his fraud claim allegation in which Gish claimed he would not have sold the family-owned funeral business but for ECI's fraudulent misrepresentations. On counter-appeal, Gish seeks review of trial court's order denying his Motion to Conform Judgment to the Evidence (Motion to Conform) and include Service Corporation International as a defendant. By order dated December 19, 2005, the Oklahoma Supreme Court consolidated the appeals for all purposes.

¶2 John Gish's grandfather opened the first Gish Funeral Home in 1901. John Gish began working for the family business at age fourteen, ultimately becoming its sole owner in 1992 when he purchased the business from his father. In February of 1997, Gish sold the funeral homes to ECI, a publicly-traded corporation. At the time of the sale, Gish Funeral Homes were advertised as the oldest family-owned and operated funeral homes in the state.

¶3 Gish considered selling his two funeral homes to ECI following a chance meeting with Ray Hackney. Hackney, along with his wife, Martha (The Hackneys) were Gish's competitors in Hobart and Mountain View. Negotiations with ECI's Director of Development, Royce Carrigan (Carrigan), ensued. At a dinner meeting with the Hackneys, Gish and Carrigan present, the four agreed the funeral homes would merge and be known as Hackney–Gish. Carrigan advised Gish and Ray Hackney they would be co-managers of the operation.

¶4 Prior to signing a five-year Management Agreement, Asset Purchase Agreement and a twenty-year Covenant Not to Compete prohibiting Gish from working in the funeral industry in any counties contiguous to either Kiowa or Caddo county, Carrigan addressed Gish's concerns over his status as a manager with the company on a long-term basis as well as the importance of ECI's willingness to continue the use of the Gish name. The contracts were signed following these discussions.

¶5 After the sale, ECI closed the two buildings owned by John Gish and moved the operation into buildings operated by Hackney Funeral Homes in Mountain View and Hobart. At trial, Gish testified that within a few weeks of the sale, Hackney and ECI excluded him from all management decisions.

All communications with ECI were funneled through Ray Hackney; Mr. Hackney scheduled and conducted staff meetings and determined the employee's work schedules; Ray Hackney told Gish which funeral services he would be handling; and although given a key to the front door of the Mountain View funeral home, Gish was not given a key to the office or access to business records.

¶ 6 In April of 1997, The Hackneys submitted their resignation to ECI, citing an inability to work with Gish. ECI did not accept the resignation and the Hackneys continued working. In January of 1998, Gish was stripped of the title of manager, but was told he would continue working *under* Hackney's supervision as a funeral director and embalmer. Following ECI's merger with SCI Oklahoma Funeral Services, Inc., Gish's employment was terminated. The company continued to pay Gish his salary and benefits through the end of the five-year term. Following termination, Gish obtained employment in the same locale as an insurance agent.

¶ 7 Gish filed the instant lawsuit seeking damages for fraudulent inducement and misrepresentation.[1] ECI filed Motions to Compel Arbitration which were denied by the trial court. Instructions tendered by ECI were rejected by the court as well as Gish's demand to include Service Corporation International as a named defendant on the verdict forms.

¶ 8 A $4.5 million verdict was returned in Gish's favor. The trial court denied ECI's Motion for a New Trial or Remittitur, and JNOV was filed by ECI. Gish's demand for a modified entry of judgment against Service Corporation International was denied. The trial court entered judgment against ECI Services of Oklahoma, Inc., a subsidiary of Equity International Corporation of Texas (now known as SCI Oklahoma Funeral Services). This appeal ensued.

¶ 9 ECI asserts the trial court erred in instructing the jury on fraud absent competent evidence to support the claim. Particularly, ECI claims that insufficient evidence

was presented to support a finding that the company misled Gish with a premeditated intent to never fulfill its promises. The Appellant also challenges the trial court's failure to instruct as to the effect of ECI's performance under the contract and the trial court's failure to provide a parol evidence instruction. Further, ECI challenges the verdict based upon Gish's ratification of the contract notwithstanding his later claim of fraud in the inducement as well as the trial court's rejection of its Motion to Compel Arbitration. ECI also seeks remittitur.

¶ 10 Gish contends that the direct and circumstantial evidence offered on his behalf provided an overwhelming basis for the jury to find that ECI's oral promise to retain him as a manager for as long as he wanted to work for the company as well as its commitment to continue the prominent use of the Gish family name in the communities the business served, were made for the sole purpose of inducing him into selling the family business and never intended to be fulfilled. In addition, says Gish, but for ECI's misrepresentations, he would not have had to leave the funeral industry and find a job in a different field.

¶ 11 The standard of appellate review of a decision from the trial court denying a motion for new trial is well-settled: "A trial court is vested with broad legal discretion in granting or denying new trial, and unless it clearly appears that the trial court erred in some pure simple question of law or acted arbitrarily, its judgment will not be disturbed on appeal." *Dominion Bank of Middle Tenn. v. Masterson*, 1996 OK 99, ¶ 16, 928 P.2d 291, 294. Unless a damage award appears to be grossly excessive or issued as the result of passion, prejudice or sympathy, it will not be subject to remittitur. *LeFlore v. Reflections of Tulsa, Inc.*, 1985 OK 72, ¶ 40, 708 P.2d 1068, 1077.

¶ 12 A jury's verdict and judgment based thereon should be sustained on appeal unless contrary to law or unsupported by competent evidence. *Doyle v. Kelly*, 1990

---

1. Gish's petition asserted a claim for damages against ECI for the intentional infliction of emotional distress. This part of Gish's claim was rejected by the trial court in sustaining ECI's demurrer to the evidence. No appeal has been taken to the court's finding in this regard.

OK 119, ¶ 4, 801 P.2d 717, 719; *Silk v. Phillips Petroleum Co.*, 1988 OK 93, ¶ 10, 760 P.2d 174, 176. On questions of fact, the appellate court is to determine the sufficiency of evidence "in light of the evidence tending to support it, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it." *Florafax International, Inc. v. GTE Market Resources, Inc.*, 1997 OK 7, ¶ 3, 933 P.2d 282, 287. Should any competent evidence be found tending to support the verdict, it shall not be disturbed on appeal. *Florafax* at ¶ 3, 933 P.2d at 287.

## FRAUD

¶ 13 ECI asserts that Gish failed to prove it never intended to fulfill its contractual obligations. ECI particularly argues that Gish failed to establish a material fact necessary to warrant a fraud instruction, pointing to the fact that Gish was, in fact, a manager until such time as a conflict arose between the Plaintiff and The Hackneys. Gish responds by pointing to conflicts between Carrigan's pre-contract oral assurances and the events occurring after the sale as circumstantial evidence of the company's intent to defraud him.

▪ ¶ 14 Actionable fraud is composed of the following elements: (1) a false misrepresentation of a material fact, (2) made as a positive assertion either known to be false or recklessly made without knowledge of the truth, (3) made with the intention of causing the other party to act, and (4) which is relied on by the other party to his or her own detriment. *Rogers v. Meiser*, 2003 OK 6, ¶ 17, 68 P.3d 967, 976. *Silk* at ¶ 12, 760 P.2d at 176–177. Although fraud cannot be presumed, circumstantial evidence may be used to prove its occurrence. *Id.* at ¶ 14, 760 P.2d at 177. *Sellers v. Sellers*, 1967 OK 34, ¶ 35, 428 P.2d 230, 238.

▪ ¶ 15 Within a short time after selling his funeral homes to ECI, it became clear to Gish that the company did not intend to recognize him as a manager. All internal memorandums were sent by the company to Ray Hackney at "Hackney Funeral Homes," never to Gish or to "Hackney–Gish." Ray Hackney selected which vendors the funeral homes would use, discontinuing Gish's prior business relationships. Ray Hackney directed all employee work schedules, advising Gish which funerals he would work. Access to the business office was controlled by Hackney and one of his long-time employees. Gish was not given access to business records.

¶ 16 Evidence of events transpiring after the occurrence of fraud, as appropriate circumstantial evidence of a wrongdoer's intent, has been affirmed by the Oklahoma Supreme Court. *Sellers v. Sellers*, 1967 OK 34, 428 P.2d 230. In *Sellers*, the Supreme Court affirmed admission of evidence of the sale of the family-owned bank to a third party, including all stock purchased by one brother from another some six weeks prior to the transaction, as evidence of the brother's intent to defraud his sibling. Evidence was offered to show that the sales price increased by 25% once the purchaser became aware of the brother's ability to deliver all shares of stock. *Sellers* at ¶ 37, 428 P.2d at 239. Rejecting the brother's defense that he had no intention of selling the bank at the time he purchased the shares, the Court reversed the trial court's granting of a demurrer to the evidence, stating:

> Fraud may be proved by circumstantial evidence. Indeed, from its nature it is difficult to prove it by direct evidence, and it is seldom that it can be so proved. Hence it is more often shown by circumstances than in any other way. It is impossible, however, to enumerate the facts from which it may be inferred. Each case must depend on its own facts, and all the facts and circumstances, connected with and surrounding the transaction are to be considered together in determining whether it was fraudulent. Facts of trifling importance when considered separately, or slight circumstances trivial and inconclusive in themselves, may afford clear evidence of fraud when considered in connection with each other. It has been said that in most cases fraud can be made out only by a concentration of circumstances, many of which in themselves amount to very

little, but in connection with others make a strong case.

*Sellers* at ¶ 35, 428 at 238–239 (citations omitted).

 ¶ 17 In *Sellers*, the Plaintiff presented circumstantial evidence of post-fraud wrongdoing contradictory to the articulated defense and we are faced with a similar situation here. Notwithstanding ECI's assertion that they fulfilled their promise to make Gish a manager, Gish offered evidence of events occurring post-contract to prove otherwise. As such, we find Gish presented sufficient evidence which, if believed by the jury, proved ECI made a false misrepresentation of material facts. We conclude the trial court did not err in submitting the fraud claim to the jury.

¶ 18 We next turn to Appellant's challenge to the sufficiency of the evidence. In this regard, we are mindful that when fraud is alleged by one party and denied by the other, and the evidence is conflicting, the issue is a question of fact for the jury. See e.g., *Stapleton v. Holt*, 1952 OK 408, ¶ 15, 250 P.2d 451, 454. In determining whether there is sufficient evidence to sustain a verdict, the Court is bound to view the evidence in the light which tends to support the judgment as well as all reasonable inferences drawn therefrom, thereby rejecting all evidence adduced by the adverse party which is conflicting. *Stroud v. Arthur Andersen & Co.*, 2001 OK 76, ¶ 9, 37 P.3d 783 (citations omitted). As such, we find sufficient competent evidence supports the jury's verdict.

## DAMAGES

 ¶ 19 The jury awarded Gish $4.5 million in general damages. Gish testified as to his prior earnings, his annual earnings under the contract, and his desire to continue working for another 25 years. The Appellant raised no objection to the manner or method of damage calculation, nor did the Appellant present any contradictory witnesses. See e.g., *Larrance Tank Corporation v. Burrough*, 1970 OK 205, ¶ 36, 476 P.2d 346, 350

2. See *Shaffer v. Jeffery*, 1996 OK 47, 915 P.2d 910, holding that "if Plaintiffs allege fraud in the inducement of the arbitration clause itself or in

(mere uncertainty of damages will not preclude recovery in the absence of an objection). A jury's award of damages must stand absent the submission of contradictory evidence. See e.g., *Cleveland v. Dyn–A–Mite Pest Control, Inc.*, 2002 OK CIV APP 95, ¶ 49 57 P.3d 119, 130; *Keck v. Bruster*, 1962 OK 35, ¶ 8, 368 P.2d at 1003, 1005.

## REMITTITUR

 ¶ 20 ECI urges this court to grant remittur and reduce the jury's damage award. ECI argues the $4.5 million verdict is excessive when compared to other awards sustained on appellate review. Gish argues that evidence was placed before the jury to support an award of damages for both loss of business and emotional distress.

 ¶ 21 "[T]he jury has broad discretion to determine the amount of damages for intangible injuries which determination will not be set aside as excessive unless it is so excessive as to 'strike mankind, at first blush as being beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice, or corruption.'" *Tsotaddle v. Absentee Shawnee Housing Authority*, 2001 OK CIV APP 23, ¶ 24, 20 P.3d 153, 161; *Joffe v. Vaughn*, 1993 OK CIV APP 169, ¶ 24, 873 P.2d at 306 (citations omitted).

¶ 22 Gish testified that due to ECI's fraudulent misrepresentations, he lost his standing in the community, his dignity and was effectively stripped of his ability to work in his chosen profession. Competent evidence was offered to support the jury's verdict. We cannot say such an award is beyond all measure unreasonable or outrageous and ECI's demand for remittitur is denied.

## MOTION TO COMPEL ARBITRATION

¶ 23 ECI complains the trial court erred in denying the Motion to Compel Arbitration and finding that, (1) a referral to arbitration is not required on claims of fraud in the inducement,[2] (2) the issues raised in the law-

the underlying contract of which the arbitration agreement is a part, the District Court must adjudicate that issue prior to granting the [De-

suit are outside of the contract's arbitration clause by its own terms, based upon language limiting it to disputes regarding the interpretation, enforcement and/or breach of the agreement,[3] and (3) ECI waived what is considered an affirmative defense by its own action and inaction. Notwithstanding challenges by Gish to the viability of this issue on appeal, ECI properly preserved this issue for review.

¶ 24 The Oklahoma Supreme Court has determined the contractual right to compel arbitration a defense to an action on the contract. *Shaffer v. Jeffery*, 1996 OK 47, ¶ 6, 915 P.2d 910, 913 (citation omitted). Citing with approval federal authority treating an arbitration agreement under the Federal Arbitration Act an affirmative defense, *Id.* at ¶ 6, 915 P.2d at 913; *Morewitz v. West of England Ship Owners, etc.*, 62 F.3d 1356, 1364 (11th Cir.1995), the Court, in addressing the rights of the parties in a state cause of action, held the parties possess the power to waive the defense. *Id.*

■ ¶ 25 The denial of a motion to compel arbitration is subject to *de novo* review, and an appellate court applies the same legal standard employed by the district court. *Towe, Hester & Erwin, Inc. v. Kansas City Fire and Marine Ins. Co.*, 1997 OK CIV APP 58, ¶ 4, 947 P.2d 594, 596. The determination of whether a party waived its right to compel arbitration is a mixed question of law and fact. Accordingly, a *de novo* review of the record is required. *Northland Ins. Co. v. Kellogg*, 1995 OK CIV APP 84, ¶ 5, 897 P.2d 1161.

¶ 26 The appellate courts have not established a strict formula when determining whether a party has waived its right to compel arbitration. In prior cases, however, the following factors have been set forth to aid us in determining if a waiver has, in fact, occurred. These include:

1. whether the party's actions are inconsistent with the right to arbitrate;

2. whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate;

3. whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay;

4. whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings;

5. whether important intervening steps e.g. taking advantage of judicial discovery procedures not available in arbitration had taken place; and

6. whether the delay affected, misled, or prejudiced the opposing party.

*Kansas City Fire and Marine* at ¶ 24, 947 P.2d at 599 (citations omitted).

■ ¶ 27 Gish filed his petition on September 29, 1998. ECI filed an answer, exchanged written correspondence and participated in discovery, all without making a demand for mandatory arbitration under the contract. ECI did not file its Motion to Compel Arbitration until November 3, 1999. On December 30, 2004, four months prior to trial and six years after the lawsuit began, ECI renewed its motion.

¶ 28 ECI's filing of responsive pleadings and participation in discovery, as well as its failure to demand arbitration in its written communication with counsel, is inconsistent with enforcement of what ECI believes to be a binding agreement to arbitrate the dispute. By its silence, ECI allowed the wheels of the litigation to turn, causing the Plaintiff to expend his time, energy and resources toward trial preparation. Opportunity during the intervening fourteen months was afforded ECI to raise the arbitration defense. See *Booker v. Sumner*, 2001 OK CIV APP 22, 19 P.3d 904 (holding a request filed eighteen months post-petition constituted a waiver of the right to seek arbitration).

fendant] any relief based upon the validity of the arbitration clause." *Shaffer* at ¶ 26, 915 P.2d at 917–18.

3. When determining whether the parties are bound by an arbitration clause, the court must first decide whether the issue is, on its face, within the agreement's purview. See *Wolverine Exploration Co. v. Natural Gas Pipeline Co.*, 1991 OK CIV APP 127, ¶ 10, 842 P.2d 352, 354.

¶ 29 Based upon the circumstances of this case, including a weighing of the factors as set forth in *Kansas City Fire & Marine,* we find that ECI waived its right to stay the proceedings and compel arbitration.

## THE INSTRUCTIONS

¶ 30 ECI challenges the verdict returned by the jury, arguing the trial court erred in rejecting ECI's proposed parol evidence instruction. In addition, ECI challenges as error the court's failure to provide the jury with an instruction as to the effect of partial performance on Gish's allegations of fraud and misrepresentation.

¶ 31 "The standard of review for jury instructions given or refused is whether a probability exists that jurors were misled, thereby reaching a different conclusion than they would have reached but for the questioned instruction(s)." *Elmore v. Doenges Bros. Ford Inc.,* 2001 OK CIV APP 27, ¶ 20, 21 P.3d 65, 72 (quoting *Cimarron Feeders, Inc., v. Tri–County Electric Cooperative, Inc.,* 1991 OK 104, ¶ 5, 818 P.2d 901, 901). Instructions to the jury need not be ideal, however, they must accurately reflect the state of Oklahoma law regarding the matter in question. *Johnson v. Ford Motor Co.,* 2002 OK 24, ¶ 9, 45 P.3d 86, 90.

## PAROL EVIDENCE

¶ 32 The parties signed written agreements subsequent to a series of conversations between Gish and Carrigan, ECI's Director of Development. Gish testified that had Carrigan not assured him in these conversations that, not withstanding any words of limitation in the written documents, ECI would continue the prominent use of Gish's family name and that he would have a place in the company as a manager for as long as he wanted, he would never have sold the family business to ECI.

¶ 33 By failing to instruct on parol evidence, ECI argues the trial court improperly allowed the jury to consider the contents of the pre-contract conversations. Under the parol evidence rule, written agreements entered into by the parties supersede all pre-contract negotiations and prior oral communications. *First National Bank in Durant v. Honey Creek Entertainment Corporation,* 2002 OK 11, ¶ 10, 54 P.3d 100, 103; 15 O.S.1991, § 137. Enforcement of this rule of law fosters the important public policy of ensuring the stability and certainty of contracts. *Id.* at ¶ 10, 54 P.3d at 103–104. The parol evidence rule is a rule of substantive law. It is not a rule of evidence. *Id.* at ¶ 10, 54 P.3d at 103.

¶ 34 Gish's demand for damages focuses exclusively on his claim that, but for Carrigan's promise that ECI would continue the legacy of the Gish family funeral business and assurances Gish would have a job with the company as a manager long after the five-year management agreement expired and for the foreseeable future, he would not have sold the family business. Gish testified this promise was especially important based upon his age and the twenty-year covenant not to compete.[4] Gish testified he would not have signed the agreement absent a promise from Carrigan that he would be a manager or co-manager and not subject to the supervisory control of The Hackneys, his former competitors in Hobart and Mountain View. Gish testified each of the assurances were vitally important in his decision making process, and that each of the promises, to his detriment, proved untrue.

¶ 35 In *Honey Creek,* a one-third owner in a business that obtained a loan to purchase property challenged the bank's effort to collect the total amount owed against her after default, the bank relying upon her written agreement to personally guarantee the loan. The owner successfully defended the effort, claiming she was fraudulently induced by the bank's CEO into signing the guarantee agreement based upon assurances that the bank would not hold her responsible for more than one-third of the amount due. On appeal, the Court found the oral statements properly considered by the jury and the parol evidence rule inapplicable, stating:

> It is well-established in Oklahoma that the parol evidence rule does not preclude evi-

---

4. John Gish was fifty-one years old when he sold his business to ECI.

dence of false and fraudulent representations of fact offered to establish fraud in the inducement of the execution of a contract, even when those representations directly contradict the contract provisions.

*Honey Creek* at ¶ 12, 54 P.3d at 104 (citations omitted).

> In these situations, the public policy fostering the certainty and stability of contracts gives way to the public policy against fraud.

*Id.* at ¶ 12, 54 P.3d at 104.

¶ 36 Based upon Gish's claim of fraud in the inducement, and under the teachings in *Honey Creek,* we find the trial court appropriately determined the pre-contract promises and assurances made by ECI's Director of Development constituted an exception to the parol evidence rule. Accordingly, we reject the argument raised by the Appellant and affirm the trial court's refusal to issue a parol evidence instruction.

## RATIFICATION

¶ 37 ECI claims the court erred in allowing Gish's claim of fraudulent inducement to be submitted to the jury, despite Gish's having ratified the 'fraud' by his acceptance of the benefits under the agreement. Gish challenges ECI's position that he is barred from seeking recovery for damages by not having sought the contract's rescission.

¶ 38 The Supreme Court has previously addressed the issue of whether a party claiming fraud in the inducement is barred from seeking damages under the contract when no effort was made to return all benefits set forth in the agreement. In a case involving a dispute between a manufacturer of a popcorn machine and a disgruntled buyer, the Court announced that the party may endeavor to or actually rescind the contract, thereby returning the parties to their starting position. In instances where rescission will not compensate for the loss, the defrauded party may retain what he has received and sue for damages. *Holcomb and Hoke Manufacturing Co. v. Jones,* 1924 OK 672, ¶ 12, 228 P. 968, 971, 102 Okla. 175.

¶ 39 In remanding the action for a new trial, the Court in *Jones* noted that once a contract is affirmed, and its binding force recognized, the right to rescind is clearly lost. Affirmance, however, does not necessarily waive the right to recover damages for fraud. In fact, the contract must be affirmed in order to recover damages. *Jones* at ¶ 22, 228 P. at 972. While this rule is available to those who proceed forward under the contract at arms length, the right to claim recovery may be waived by a party who, while operating under the contract, seeks additional favors or conditions upon its performance or who otherwise enter into additional agreements with the opposing party. *Jones* at ¶ 28, 228 P. at 973.

■ ¶ 40 In the instant case, Gish ratified the contract by continuing to work in the funeral homes taken over by ECI. No evidence was offered to show Gish entered into additional agreements with ECI or otherwise extracted conditions in exchange for his performance. Having found no exception to Gish's right to affirm the contract and seek damages, there is nothing in the record to support ECI's claim of reversible error on this issue.

## PARTIAL PERFORMANCE

¶ 41 The trial court gave Oklahoma Uniform Civil Jury Instruction 18.7 [5] and 18.8 [6] regarding statements as promises as well as

---

5. Oklahoma Uniform Civil Jury Instruction 18.7 STATEMENTS OF PROMISES The failure of a person to perform a promised future act does not constitute a false representation of a past or present fact unless at the time [he/she] made the promise, [he/she] then did not intend to perform the promise, and [he/she] made the promise with the intent to deceive the promisee into acting where he otherwise would not have done so.

6. Oklahoma Uniform Civil Jury Instruction 18.8 STATEMENTS ABOUT THE FUTURE AS FALSE REPRESENTATIONS To constitute actionable fraud, false representations must generally relate to present or pre-existing fact, and cannot ordinarily be predicated on representations or statements which involve matters that [ (may) / (may not) ] occur in the future. However, if a promise about the future is made with an intention not to perform it, and is made for the purpose of deceiving the person to whom it is made, and inducing [him/her] to act, such actions constitute fraud.

statements about the future as false representations. The trial court refused ECI's request for modified OUJI 18.8 as follows:

... Attempts and actions toward fulfillment of the representations removes the issue from the concept of fraud and relegates the failure to perform to simple non-performance of a promise but not fraud.

¶ 42 Denying Gish's charge of fraud and misrepresentation, ECI claimed that by the trial court's failure to tender the modified instruction, the jury was prohibited from considering ECI's attempts to perform. ECI pointed to the fact Gish was given the title of manager for a period of time and that ECI identified the Hobart funeral home on the window as "Hackney–Gish" after the Plaintiff complained. Gish countered that ECI's actions were merely a ruse intended to pacify and placate him in the short run.

¶ 43 The language set forth in these two instructions allowed the jury to find in ECI's favor and determine that ECI's conduct post-contract did not constitute fraud. And as the jury was given sufficient instruction which generally encompassed the defense raised, the jury was properly instructed. See *Johnson v. Ford Motor Co.*, 2002 OK 24, 45 P.3d 86 (instructions given did not foreclose a defense verdict on the theory asserted).

¶ 44 "When the trial court submits a case to the jury under proper instructions on its fundamental issues and a judgment within the issues and supported by competent evidence is rendered in accord with the verdict, the judgment will not be reversed for refusal to give additional or more detailed instructions requested by the losing party if it does not appear more probable that the refusal resulted in a miscarriage of justice or substantial violation of constitutional or statutory rights." *Johnson* at ¶ 16, 45 P.3d at 92 (citations omitted). The instructions adequately set forth the law on this issue and it is not probable that the refusal of the additional language resulted in a miscarriage of justice. We find no error by the trial court.

## APPELLEE'S COUNTER–APPEAL

### MOTION TO CONFORM JUDGMENT TO THE EVIDENCE

¶ 45 Post-trial, the court considered, and denied, Gish's Motion to Conform and add Service Corporation International as a named defendant. The court held, (1) the use of the term "SCI" during trial insufficient to identify a specific entity, (2) that as it is the duty of the trier of fact to determine whether to pierce the corporate veil, and (3) no evidence had been placed in the record to make such a finding as ECI's corporate structure was never identified as an issue at trial. The court also determined it unfair for the issue to be addressed in the closing stages of the trial proceedings.

¶ 46 The court's power to enter judgment against Service Corporation International is governed by 12 O.S. § 2015 (B) of the Oklahoma Pleading Code which provides, in part,

... AMENDMENTS TO CONFORM TO THE EVIDENCE. When issues not raised by the pleadings or by the pretrial conference order .... are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings or the pretrial conference order. Such amendment as may be necessary to cause the pleadings or the pretrial conference order to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings or the pretrial conference order, the court may allow the pleadings or the pretrial conference order to be amended and shall do so freely when the presentation of the merits of the action will be served thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence....

12 O.S. § 2015 (B). The decision of whether to permit an amendment to the pleadings is left to the discretion of the trial court. *Andersen v. Fellers,* 1998 OK CIV APP 53, ¶ 15, 960 P.2d 851, 855. A trial court acts within its discretion when a justifying reason exists to deny a request. *McDermott v. Sentry Life Ins. Co., Inc.,* 2000 OK CIV APP 115, ¶ 27, 15 P.3d 508, 516.

 ¶ 47 In the case before us, neither party asked the court to address ECI's corporate structure from the date of the lawsuit's filing until Gish made an oral request following the close of evidence for a modification in the verdict forms. And, as such, no evidence was offered during trial from which the trier of fact could have determined whether to pierce ECI's corporate veil. When determining "if one corporation is but an instrumentality or agent of another, corporate distinctions must be disregarded and the two separate entities must be treated as one. Whether this theory of vicarious liability be based on principles of agency or on the doctrine of 'piercing the corporate veil', it doubtless gives rise to a fact question." *Frazier v. Bryan Memorial Hospital Authority,* 1989 OK 73, ¶ 16, 775 P.2d 281, 288 (emphasis supplied); *Lewis v. Central Oklahoma Medical Group,* 2000 OK CIV APP 26, ¶ 13, 998 P.2d 202, 206 (the determination of whether one corporation had control of another, and ultimately possessed with vicarious liability, is for the trier of fact).

¶ 48 Service Corporation International's status and relationship to ECI is disputed by the parties in the post-trial motions and briefs filed with the lower court and now on appeal. In support of his motion, Gish has relied upon documents readily available since 1999. Ample opportunity had been available to Gish to support his theory and to place the issue, and the evidence, in the hands of the jury. This he did not do.

¶ 49 Finding the lower court did not abuse its discretion in rejecting Gish's Motion to Conform, the trial court's order in this regard is affirmed.

## SUMMARY

¶ 50 We find no error in the jury's verdict, the instructions submitted to the jury or to the trial court's rejection of ECI's Motion for Arbitration or for remittitur. We find the trial court did not abuse its discretion in rejecting Gish's Motion to Conform. Accordingly, the trial court's order is AFFIRMED.

BELL, P.J., and HANSEN, J., concur.