TOWE, HESTER & ERWIN,
INC., Plaintiff/Appellee,

v.

KANSAS CITY FIRE & MARINE IN-
SURANCE COMPANY, Glen Falls In-
surance Company, Niagara Falls Insur-
ance Company, the Fidelity Insurance
Company, the Fidelity and Casualty
Company, Marine Office of America
Corporation, Michael Kolody, and the
Continental Insurance Company, Defen-
dants/Appellants,

The Continental Insurance Companies
and the Continental Corporation,
Defendants.

No. 86062.

Court of Civil Appeals of Oklahoma,
Division No. 1.

April 1, 1997.

Rehearing Denied May 6, 1997.

Certiorari Denied Sept. 24, 1997.

George D. Davis, Patrick H. Kernan, McKinney, Stringer & Webster, P.C., Tulsa, and John C. Mackey, Wade & Mackey, Lawton, for Plaintiff/Appellee.

John R. Denneny, Carrie Palmer Hoisington, Holloway, Dobson, Hudson, Bachman, Alden, Jennings & Holloway, Oklahoma City, for Defendants/Appellants.

## OPINION

BUETTNER, Judge.

Towe, Hester & Erwin, Inc. (TH & E), a licensed insurance agency in Lawton, sued defendants, a group of affiliated non-resident insurance companies (collectively, Continental). TH & E alleged that it was forced to sign a "Rehabilitation Program" agreement under threat of immediate termination of the agency agreement. TH & E further alleged that neither the Rehabilitation Program Agreement nor the Circle Agent Five–Year Market Agreement, dated August 21, 1990, were part of, or subject to, the arbitration clause in the January 1, 1992 Agency Agreement. TH & E claimed it was damaged by Continental's wrongful conduct, breach of contract, breach of fiduciary duties, misrepresentation and deceit.

Continental answered the lawsuit denying any wrongdoing and pointing out that the August 21, 1990 document was not a Circle Agency agreement but was a Five Year Market Agreement Addendum to the 1984 Agency Agreement. Continental also affirmatively defended on the ground that the parties, by contract, had agreed that unresolved disputes arising in connection with the Agency Agreements would be submitted to arbitration.

Subsequently, Continental filed two applications to stay the proceedings and compel arbitration—the first grounded on the Oklahoma Uniform Arbitration Act, 15 O.S.1991 § 801 et seq. (Oklahoma Arbitration Act), and the second filed pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. TH & E then amended its petition alleging facts which might provide a basis for avoiding arbitration. The trial court denied Continental's applications. Continental lodged this appeal pursuant to Sup.Ct.R. 1.60(I), interlocutory orders appealable by right, and 15 O.S.1991 § 817.

## STANDARD OF REVIEW

■ The appellate court reviews the "grant or denial of a motion to compel arbitration de novo, applying the same legal standard employed by the district court." *Armijo v. Prudential Insurance Co. of America, et al.,* 72 F.3d 793, 796 (10th Cir.1995).

## ISSUES

Continental states that an arbitration provision is applicable to all claims asserted by TH & E. It then contends that the Federal Arbitration Act requires the court to refer TH & E's claims to arbitration. In the alternative, Continental argues that the Oklahoma Arbitration Act requires arbitration of the claims. In addition, Continental asserts that it has not waived its right to arbitration, and that its actions were neither unconscionable nor illegal, which would justify revocation of the underlying contract.

We find that the Federal Arbitration Act applies to the matter at hand and that the trial court erred in denying the Second Application for Stay and in failing to compel arbitration. Consequently, there is no need to address whether the Oklahoma Arbitration Act would also mandate arbitration. We further find that Continental did not waive its rights to arbitration. Whether TH & E was fraudulently induced into entering the Rehabilitation Program Agreement is an issue to be decided through the arbitration process.

## DISCUSSION

### A. General Arbitrability

Both federal and Oklahoma statutes provide that arbitration agreements are valid, enforceable and irrevocable except upon grounds which exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2; 15 O.S.1991 § 802. TH & E argues that the Federal Arbitration Act is inapplicable because its claims are sufficient for revocation of a contract on legal or equitable grounds. In this regard, TH & E argues that it was fraudulently induced into executing the Rehabilitation Program Agreement, which it claims was an independent contract that did not contain an arbitration clause.

■ In the federal scheme, only if "the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate" will the federal court proceed to adjudicate the issue. *Prima Paint Corporation v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). A contention that the entire contract is void must be decided by the arbitrator because doubts concerning the scope of the arbitrable issue should be resolved in favor of arbitration. *Telum, Inc., v. E.F. Hutton Credit Corp.,* 859 F.2d 835, 837 (10th Cir.1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).

■ The 1984 and 1992 Agency Agreements between the parties both contain, at Section IX, prominent and detailed arbitration provisions.[1] The August 21, 1990 Five–Year Market Agreement is an addendum to the 1984 Agency Agreement. Both the 1984 and 1992 Agency Agreements in Section V, paragraph B, contain the authority for Continental to establish a rehabilitation period in order to work with the local agency to avoid termination of the agreement. Thus, TH & E's claims arising from the Rehabilitation Program Agreement is a dispute "in connection with" the Agency Agreements and are

---

1. Section IX includes the following language: "If any dispute or disagreement shall arise in connection with this Agreement that cannot be re- solved by the parties, the matter shall be submitted to arbitration."

subject to arbitration, absent any other legal impediment.

■ In connection with its claim that the Rehabilitation Program Agreement is revocable, TH & E claims that Continental wanted it to obtain from its clients unlawful endorsements which would reduce the uninsured motorist coverage its clients had, i.e., Continental wanted to eliminate "stacking" coverages. Continental denied this claim and relies on extant Oklahoma law which allows insurers to limit liability to single UM coverage where multiple vehicles are insured under a single policy and where only one premium is charged for the UM coverage. *Withrow v. Pickard,* 905 P.2d 800, 806 (Okla.1995). We find this issue arbitrable pursuant to the federal act.

Finally, we find no support for the argument that the 1984 and 1992 Agency Agreements between the parties do not relate to interstate commerce.[2] The entire business relationship between the parties is interstate in character, and affects interstate commerce.

■ TH & E also claims that all of the agreements between the parties are contracts of adhesion. Contracts of adhesion, however, are not in themselves illegal or inequitable. They are often used in commerce and allow the party proposing the contract a measure of standardization among the contracts it lets and equal treatment among its contractees. In Oklahoma, the rule is that "[p]rinted contracts are interpreted most strongly against the drafter of the instrument...." *Continental Federal Savings & Loan v. Fetter,* 564 P.2d 1013, 1019 (Okla.1977). A strong interpretation against the drafter is a way of strengthening the nondrafter's contracting position. If a pre-printed contract should contain an illegal arbitration clause, which could happen when a national concern contracts with parties who have differing state laws, then courts may

sever the offending clause. *Graham Oil Company v. ARCO Products Company,* 43 F.3d 1244, 1248 (9th Cir.1994).

### B. *The McCarran–Ferguson Act*

■ TH & E also argues that arbitration is precluded by the McCarran–Ferguson Act, 15 U.S.C. § 1011, et seq. (the Act). The Act generally relegates the regulation of insurance to the states and prohibits Congress from passing laws which supersede any state law "regulating the business of insurance." 15 U.S.C. § 1012(b). Thus, TH & E argues that the Federal Arbitration Act may not be construed to allow arbitration of insurance disputes if a state law specifically prohibits such arbitration.

The Tenth Circuit Court of Appeals has held that the Kansas arbitration statute was sufficiently specific to exclude disputes involving reinsurance agreements from the reach of the Federal Arbitration Act. *Mutual Reinsurance Bureau v. Great Plains Mutual Insurance Company, Inc.,* 969 F.2d 931 (10th Cir.1992). The Kansas Arbitration Act (K.S.A. 5–401) provided:

> "A written agreement to submit any existing controversy to arbitration or a provision in a written contract, *other than a contract of insurance* ... is valid, enforceable and irrevocable...." (Emphasis added.)

The Tenth Circuit concluded that the Kansas Arbitration Act was a statute regulating the business of insurance because of the specific exclusion of "contracts of insurance," and that a reinsurance agreement was such a contract.

The Oklahoma Act provides as follows:

> "This act shall not apply to collective bargaining agreements or *contracts with reference to insurance* except for those contracts between insurance companies." 15 O.S.1991 § 802 A (emphasis added).

---

**2.** 9 U.S.C. § 1, in pertinent part, states: "Commerce", as herein defined, means commerce among the several states or with foreign nations, or in any Territory of the United States or in the District of Columbia....

The Federal Arbitration Act's application to commerce is broadly construed, so that "control

over interstate commerce reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce." *Allied–Bruce Terminix Companies v. Dobson,* 513 U.S. 265, 272, 115 S.Ct. 834, 839, 130 L.Ed.2d 753 (1995) (citing 1924 congressional intent).

TH & E has cited a trilogy of Supreme Court cases construing the "business of insurance" phrase used in the Act. *Securities and Exchange Commission v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969); *Group Life and Health Insurance v. Royal Drug*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979); and *Union Labor Life Insurance Company v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). The common focus in these cases is the relationship between the insurance company and the policy holder.

In *Securities and Exchange Commission v. National Securities, Inc.*, 393 U.S. at 463, 89 S.Ct. at 570, the Supreme Court held that the McCarran–Ferguson Act did not ban a suit in which the SEC sought to invalidate a merger of insurance companies because of use of fraudulent misrepresentation to the stockholders. The Court in *Group Life & Health Insurance v. Royal Drug Co.*, 440 U.S. at 214, 99 S.Ct. at 1075, held that agreements between the insurance companies and pharmacies, which minimized costs and maximized profits for the insurance company were not the "business of insurance" but merely an arrangement for the purchase of goods and services. The McCarran–Ferguson Act did not preclude application of the Federal Anti–Trust Act. Finally, the Supreme Court listed elements for determining whether an enterprise or its practices are part of the "business of insurance" sufficient to exempt the practice from antitrust scrutiny in *Union Labor Life Insurance Co. v. Pireno*, 458 U.S. at 129, 102 S.Ct. at 3009. Those factors are *"first*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry."

This focus can also be seen in the Oklahoma Act. The act is generally applicable to contracts, except collective bargaining agreements or contracts with reference to insurance, except for contracts between insurance companies. Thus, contracts with reference to insurance are not generally arbitrable, except contracts between insurance companies which are similar to the reinsurance agreement in *Mutual Reinsurance.* 969 F.2d at 933. The Tenth Circuit found that reinsurance agreements met the criteria established by the Supreme Court in *Securities and Exchange*, *Royal Drug* and *Pireno.*

The Oklahoma Act must be reasonably construed, *Oklahoma Association for Equitable Taxation vs. City of Oklahoma City*, 901 P.2d 800, 804 (Okla.1995), keeping in mind the general policy favoring arbitration agreements. "No longer does Oklahoma disfavor arbitration. In fact, we have a strong public policy which favors it." *Rollings v. Thermodyne Industries, Inc.*, 910 P.2d 1030, 1033, 1036 (Okla.1996).

The Oklahoma Supreme Court interpreted the phrase, "contracts with reference to insurance," in *Cannon v. Lane*, 867 P.2d 1235 (Okla.1993). In that case, the issue was whether an employee's dispute with a health maintenance organization (HMO) was subject to arbitration pursuant to agreement or excluded from arbitration under the Oklahoma Arbitration Act. The Court stated that, " 'with respect to' has been defined as [t]he state of being related or referred." *Id.* at 1237. The Court went on to discuss the similarities between HMO and health insurance organizations and found that the contract between the employer, State of Oklahoma, and the HMO was a contract with reference to insurance and thus the dispute was not arbitrable.

The *Cannon* case is consistent with *Pireno* and its predecessors in that once the HMO was classified as a health insurance organization, the dispute was essentially between a policyholder and the insurance company. We should attempt to harmonize the federal term, "the business of insurance," with the Oklahoma term, "contracts with reference to insurance," because of the statutory interrelationships.

■ Under the McCarran–Ferguson Act, Oklahoma has the exclusive right to regulate "the business of insurance" in Oklahoma. The "business of insurance" requires a policyholder relationship, among other factors. A state may therefore decide, in its arbitration statute, whether such insurance matters

are subject to arbitration. *Mutual Reinsurance Bureau, supra.* However, if the state attempts to regulate subjects tangential to "the business of insurance," the state moves outside of its exclusive arena. The regulation becomes one relating to commerce, and the Federal Arbitration Act will preempt state law. As Justice Opala stated in his concurring opinion in *Rollings:*

> "*Settled* federal jurisprudence teaches that when a contract (1) *involves commerce* and (2) *calls for arbitration,* the *arbitrability* of both present and future disputes arising under its terms is to be determined *solely* by the Federal Arbitration Act."

910 P.2d at 1041. Thus, in construing the term "contracts with reference to insurance," we adopt the criteria from *Pireno,* which requires the subject matter of the regulation to transfer or spread a policyholder's risk, deal with an integral part of the policy relationship between the insurer and the insured, and be limited to entities within the insurance industry. Using these factors, contracts between an insurer and its employees or independent contractors are not "contracts with reference to insurance," and arbitration provisions in such contracts are not excluded from application of the Federal Arbitration Act.

### C. *Waiver*

▮▮▮▮ Continental next contends that it did not waive its right to enforce the arbitration agreement. The record reveals that Continental wrote TH & E a letter inviting them to join in arbitration before the lawsuit was filed. After the lawsuit was filed, Continental raised the arbitration provision as an affirmative defense in its answer. After that time, Continental applied twice to the court for a stay of proceedings and an order compelling arbitration. In the order denying the applications, the trial court also ordered discovery held in abeyance for 30 days. TH & E did not show that it was prejudiced by the timing of Continental's applications. Under both the Federal and Oklahoma Arbitration Acts, there is a strong presumption in favor of arbitration. *Northland Insurance Co. v. Kellogg,* 897 P.2d 1161, 1162 (Okla.App.1995). Nonetheless, a party may waive its contractual right to arbitration. In deciding whether the arbitration right was waived, the court examines factors such as:

1. whether the party's actions are inconsistent with the right to arbitrate;

2. whether the 'litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate;

3. whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay;

4. whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings;

5. 'whether important intervening steps [e.g. taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and

6. whether the delay 'affected, misled, or prejudiced' the opposing party.

*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1489 (10th Cir. 1994). Based upon these factors, which almost unanimously weigh in Continental's favor, Continental did not waive its right to arbitration.

### D. *Termination of Underlying Contract*

▮▮▮▮ We also agree with Continental's contention that the arbitration provisions extend and are enforceable after the termination of the agency agreement. The agreement did not contain any language supporting a position that the arbitration provision terminated at the time the contract terminated. The rule we follow is that "where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO,* 430 U.S. 243, 254, 97 S.Ct. 1067, 1074, 51 L.Ed.2d 300 (1977).

### CONCLUSION

For these reasons, we reverse the trial court's order denying the second application for stay filed February 13, 1995 and remand

the matter to the trial court with directions to enter an order granting the application and compelling the parties to arbitration.

REVERSED AND REMANDED WITH DIRECTIONS.

HANSEN, P.J., concurs.

JOPLIN, J., dissents.