2007 OK CIV APP 125

**Kathy RUST, Michal Rust, and Cari Smith, Plaintiff/Appellees,**

v.

**CARRIAGE SERVICES OF OK, INC., Carriage Funeral Holdings, Inc., d/b/a Resthaven Memory Gardens, and Resthaven Memorial Park, Defendant/Appellants.**

**No. 104,178.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 5, 2007.

Certiorari Denied Dec. 4, 2007.

Michael Gassaway, Oklahoma City, OK, for Plaintiff/Appellees.

Clyde A. Muchmore, Robert G. McCampbell, Chris M. Stephens, Crowe & Dunlevy, Oklahoma City, Oklahoma, for Defendant/Appellants.

CAROL M. HANSEN, Presiding Judge.

¶1 Defendant/Appellants Carriage Services of OK, Inc., Carriage Funeral Holdings, Inc., d/b/a/ Resthaven Memory Gardens, and Resthaven Memorial Park (collectively, Cemetery) appeal from an interlocutory order denying their Motion to Compel Arbitration.[1] Plaintiff/Appellees Kathy Rust, Michal Rust, and Cari Smith (collectively, Rusts) purchased crypts in Cemetery's mausoleum under contracts containing no arbitration provision. Years later, Rusts purchased a bench at Cemetery under a purchase contract containing a broad arbitration clause (Bench Contract). The following year Rusts sued Cemetery for negligent treatment of human remains, negligent infliction of emotional distress, and outrage. Cemetery sought to compel arbitration of Rusts' claims under the arbitration clause in the Bench Contract, which provided it applied to any dispute between the parties. Rusts asserted their claims were unrelated to the Bench Contract.

¶2 On *de novo* review, we hold the Bench Contract arbitration clause did not retroactively modify the earlier agreements, and therefore did not apply to disputes arising from the relationship of the parties commenced by the earlier agreement.

¶3 The record shows Kathy and Michal Rust purchased two crypts at Cemetery under an agreement dated May 21, 1993.[2] Rusts' decedent, Robert Rust, was interred in one of the crypts May 22, 1993. Kathy Rust later purchased four more crypts in an agreement dated August 26, 1993.[3] The record contains an amended contract for the purchase of these same 4 crypts, but at a slightly higher cost, apparently due to a longer financing term, dated September 5, 1993.[4] The agreements for the purchases of the crypts do not include any arbitration language.

¶4 In 2005, Kathy Rust purchased a bench right at Cemetery. The Bench Contract, dated July 19, 2005, contains the following arbitration clause on its front page:

> NOTICE: BY SIGNING THIS AGREEMENT, YOU ARE AGREEING TO HAVE ANY AND ALL DISPUTES BETWEEN YOU AND THE SELLER RESOLVED BY ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A COURT OR JURY TRIAL AS WELL AS YOUR RIGHT OF APPEAL.

At the bottom of the front page of the Bench Contract, below the signature lines, is a notice that the back of the contract contains additional terms. The back of the contract includes the following provision:

> *ARBITRATION:* ANY CONTROVERSY OR CLAIM ARISING BETWEEN THE PARTIES (INCLUDING THE INTERPRETATION OF THIS ARBITRATION CLAUSE) SHALL BE SUBMITTED TO AND FINALLY RESOLVED BY MANDATORY AND BINDING ARBITRATION IN ACCORDANCE WITH THE STATUTES, RULES OR REGULATIONS GOVERNING ARBITRATIONS IN THE STATE WHERE THIS AGREEMENT HAS BEEN EXECUTED. IN THE ABSENCE OF SUCH STATUTES, RULES OR REGULATIONS, THE ARBITRATION PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH THE APPLICABLE RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA"); PROVIDED, HOWEVER, THAT THE FOREGOING REFERENCE TO THE AAA RULES SHALL NOT BE DEEMED TO REQUIRE ANY FILING

---

1. According to Cemetery's Brief in Chief, the proper Defendant in this matter is Carriage Services of Oklahoma, L.L.C., d/b/a/ Resthaven Memory Gardens. Cemetery asserted Carriage Funeral Holdings, Inc. is not a party to the contracts at issue, and Cemetery is not aware of an entity named Resthaven Memorial Park.

2. The May 21, 1993 agreement does not list any beneficiaries.

3. The August 26, 1993 purchase agreement is signed by Kathy Rust as purchaser. Michal Rust and Cari Smith are listed as beneficiaries by the language "Seller agrees to convey the above-described Interment Rights by issuance of a Certificate of Interment Rights to the persons designated below(.)"

4. The September 5, 1993 purchase agreement is signed by Kathy Rust as purchaser and Cari Smith as co-purchaser. Only Michal Rust is named as a beneficiary.

WITH THAT ORGANIZATION, NOR ANY DIRECT INVOLVEMENT OF THAT ORGANIZATION. NOTWITH-STANDING ANYTHING TO THE CONTRARY IN THE APPLICABLE STATUTES, RULES OR REGULATIONS, THE ARBITRATOR SHALL BE SELECTED BY MUTUAL AGREEMENT OF THE PARTIES OR BY A COURT OF COMPETENT JURISDICTION IN THE CITY OR COUNTY IN WHICH SELLER IS LOCATED, UPON THE APPLICATION OF ONE OR BOTH PARTIES. THIS ARBITRATION PROVISION SHALL BE BINDING ON THE SELLER, YOU AS THE PURCHASER, AND ANY OTHER PERSON WHO CLAIMS TO BE A THIRD PARTY BENEFICIARY OF THIS AGREEMENT.

The parties do not dispute that the 2005 Bench Contract was for the purchase of a bench in front of Rusts' crypts.

¶ 5 In their Petition, Rusts alleged Cemetery was negligent in interring bodies in its mausoleum.[5] As noted above, Rusts asserted claims for negligent treatment of human remains, negligent infliction of emotional distress, and outrage. Rusts made no claim related to the bench or the Bench Contract in their Petition.

¶ 6 Cemetery responded to the Petition with a Motion to Compel Arbitration based on the Bench Contract. Cemetery asserted that Rusts' "Petition asserts a variety of claims in tort, all of which arise out of the contractual setting of the written contracts between" Cemetery and Kathy Rust. Rusts objected to the Motion to Compel Arbitration, arguing that none of their claims related to the purchase of the bench, and that therefore the arbitration clause in that contract was not applicable to their claims.

■■■ ¶ 7 The trial court denied Cemetery's Motion to Compel Arbitration, and Cemetery appeals. An order denying a mo-tion to compel arbitration is an interlocutory order appealable by right. *Freeman v. Prudential Sec., Inc.*, 1993 OK CIV APP 65, ¶ 6, 856 P.2d 592, 594. We review the grant or denial of a motion to compel arbitration *de novo*. *Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co.*, 1997 OK CIV APP 58, ¶ 4, 947 P.2d 594, 596.

■■■ ¶ 8 In seeking to compel arbitration, a party "must present a statement of the law and facts showing an enforceable agreement to arbitrate the issues presented by the petition." *Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 16, 138 P.3d 826. Ambiguities are resolved in favor of finding the dispute is arbitrable; "arbitration should be allowed unless the court can say with 'positive assurance' the dispute is not covered by the arbitration clause." *City of Muskogee v. Martin*, 1990 OK 70, 796 P.2d 337, 340. However, the courts will not impose arbitration where the parties have not agreed to it because "(a)rbitration is a matter of consent, not coercion." *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 22, 160 P.3d 936.

■■■ ¶ 9 In determining whether the parties have consented to arbitration, the courts will decide whether there is a valid enforceable arbitration agreement, whether the parties are bound by the arbitration agreement, and whether the parties agreed to submit a particular dispute to arbitration. *Id.* The contract must be construed to carry out the intent of the parties at the time the contract was made. *Oxley v. General Atlantic Resources, Inc.*, 1997 OK 46, 936 P.2d 943, 945.

¶ 10 Rusts' tort claims, to the extent they arise from a contractual relationship between the parties, relate only to the 1993 crypt purchase contracts. In those contracts, the parties expressed no intent to submit disputes to arbitration. The Bench Contract

---

**5.** Specifically, Rusts claimed that the body in the crypt above their decedent's was interred in a way that caused the crypt to leak decaying human remains out of the crypt and onto the crypt containing Rusts' decedent. Rusts alleged that in May 2006 they discovered the leaking materials when they visited their decedent's crypt, that they touched the liquid in an effort to determine what the substance was, and that they became physically ill when they realized what they had touched. They further alleged that Cemetery misrepresented the source of the liquid. Rusts also claimed that they purchased the crypts in reliance on Cemetery's agreement to properly care for the remains interred there.

does clearly express such an intent. However, the nature of Rusts' claims do not depend on the existence of the Bench Contract, and do not arise from that contractual relationship. Only if we determined the parties intended the arbitration clause in the Bench Contract to retroactively modify the 1993 contracts could we compel arbitration. The Bench Contract does not state such an intent. Therefore, we hold the Bench Contract arbitration clause did not retroactively modify the earlier agreements, and does not apply to disputes arising from the relationship of the parties commenced by the earlier agreement. The trial court's order is AFFIRMED.

BELL, J., concurs.

BUETTNER, J., dissenting.

¶ 11 I respectfully dissent. In seeking to compel arbitration, a party "must present a statement of the law and facts showing an enforceable agreement to arbitrate the issues presented by the petition." *Rogers v. Dell Computer Corp.*, 2005 OK 51, ¶ 16, 138 P.3d 826. Ambiguities are resolved in favor of finding the dispute is arbitrable; "arbitration should be allowed *unless the court can say with 'positive assurance' the dispute is not covered* by the arbitration clause." *City of Muskogee v. Martin,* 1990 OK 70, 796 P.2d 337, 340 (emphasis added).

¶ 12 Cemetery asserts that all of Rusts' claims in this case must be arbitrated because the arbitration provision is not limited to disputes *arising out of* the contract containing the arbitration clause. The arbitration agreement provides that it applies to *any dispute between the parties*. The nature of Rusts' claims do not depend on the existence of the bench purchase agreement, and indeed if Rusts had never entered the bench

purchase agreement, their claims presented in this case would remain. This case presents a question of first impression in Oklahoma: whether an arbitration provision which includes no limiting language, except that disputes must be between the parties, applies to require arbitration of a dispute that unquestionably arose out of an earlier agreement which did not include an arbitration provision.

¶ 13 There is a strong public policy favoring arbitration which is reflected in both state and federal statutory law.[6] The arbitration clause at issue in this case provides that interpretation of the arbitration clause must be arbitrated. The Oklahoma Supreme Court has adopted the U.S. Supreme Court's holding that where the parties have agreed to arbitrate even the interpretation of an arbitration clause, "the court's function is narrowly restricted to determine whether the party requesting arbitration asserts 'a claim which on its face' is covered by the (arbitration) agreement."[7] Under the FAA, any doubt as to the scope of arbitrable issues is resolved in favor of arbitration.[8] The plain language of the OUAA suggests that a valid arbitration clause need not limit its application except that the dispute to be arbitrated must be between the parties to the arbitration clause.[9]

¶ 14 The South Carolina Court of Appeals has held that an arbitration clause which applies to claims "arising out of or related to this agreement" may cover disputes outside the agreement only if the disputes relate to the subject matter of the agreement. But, a clause requiring arbitration of disputes "arising out of the relationship of the parties" does not require that the disputes relate to the contract containing the arbitration

---

6. 12 O.S.Supp.2006 § 1857(A); 9 U.S.C. § 2; *Towe, supra,* 947 P.2d at 599.

7. *City of Muskogee, supra,* 796 P.2d at 340, citing *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

8. *Wilkinson v. Dean Witter Reynolds, Inc.,* 1997 OK 20, ¶ 8, 933 P.2d 878, 879.

9. 12 O.S.Supp.2005 § 1857(A), provides:

An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

clause.[10]  The pertinent concern is that the dispute concern the parties' relationship.  *Id.*  The South Carolina Court of Appeals relied in part on authority from the Tenth Circuit to hold that *where the parties expressly agreed to arbitrate all controversies between them, the source of the claim is not relevant because the parties "have manifested an intention to arbitrate all of their disputes arising from their business relations, not just those arising under a particular contract."*  *Id.* at 139 (emphasis added).  The court found that *where the clause applies to any dispute between the parties, it may apply to any dispute of the parties, even where, as here, the dispute arose under an earlier contract without an arbitration provision.  Id.* at 140 (emphasis added).

¶ 15 The Tenth Circuit Court of Appeals's decision cited in *The Vestry and Church Wardens* involved an arbitration clause requiring arbitration of "any controversy between us arising out of your business or this agreement."  *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 13 F.3d 330 (10th Cir.1993).  In that case, the plaintiff purchased securities from Merrill Lynch in 1980.  In 1982, Merrill Lynch executed a formal account agreement which included the arbitration provision.  The plaintiff later sued Merrill Lynch based on the 1980 sale of securities.  The plaintiff challenged Merrill Lynch's motion to compel arbitration, arguing the claims arose before the 1982 arbitration agreement.

¶ 16 The Tenth Circuit Court of Appeals held the 1980 claims were subject to arbitration under the later agreement.  After noting that doubts are to be construed in favor of arbitration, the court concluded that the language "any controversy ... arising out of your business" was "clearly broad enough to cover the dispute at issue despite the fact that the dealings giving rise to the dispute occurred prior to the execution of the [arbitration] agreement."  *Id.* at 332.  The court quoted another circuit court's pronouncement that "(a)n arbitration clause covering disputes arising out of the contract or business between the parties evinces a clear intent to cover more than just those matters set forth in the contract," citing *Belke v. Merrill Lynch Pierce Fenner & Smith,* 693 F.2d 1023, 1028 (11th Cir.1982).  The Eleventh Circuit Court of Appeals has also found that an agreement to arbitrate "any dispute between (the parties) or claim by either against the other" was "brief, unequivocal and all-encompassing" language that required arbitration of "any and all claims against each other, with no exceptions."  *Brown v. ITT Consumer Financial Corp.,* 211 F.3d 1217, 1221 (11thCir.2000).  In *Brown,* the court further held that the presumption of arbitrability in the FAA means that "parties must clearly express their intent to exclude categories of claims from their arbitration agreement."  *Id.* at 1222.

¶ 17 The Fourth Circuit Court of Appeals has enforced an arbitration provision that plainly required arbitration of any dispute arising out of the parties' relationship.  *Cara's Notions, Inc. v. Hallmark Cards, Inc.,* 140 F.3d 566 (4th Cir.1998).  The court explained *"(t)he breadth of the language clearly establishes that the arbitration clause was intended to apply to all conflicts between the parties and not only to conflicts regarding (the second contract) in particular."  Id.* (Emphasis added).

¶ 18 In this case, Rusts' claims do not arise out of the contract containing the arbitration clause.  However, the dispute is undoubtedly between the parties to the contract containing the arbitration clause.  That is all that is required by the unambiguous arbitration clause here.  Where an arbitration clause has no limiting language, the strong policy in favor of arbitration compels the finding that the unambiguous language of the agreement prevails.  The arbitration clause here applies to any dispute between the parties, and the claims here constitute a dispute between the parties.  Any remaining question of arbitrability must be determined by an arbitrator, as provided by the arbitration clause.  Given

---

**10.**  *The Vestry and Church Wardens of the Church of the Holy Cross v. Orkin Exterminating Co.,* 356 S.C. 202, 588 S.E.2d 136, 140 (S.C.App.2003).

the plain language of the arbitration clause, along with authority finding such clauses enforceable, I am unable to say "with positive assurance" that Rusts' claims are not covered by the arbitration agreement. I would therefore reverse and remand with directions to the trial court to enter an order compelling arbitration of Rusts' claims.