2010 OK CIV APP 124

**HIGHLAND CROSSING, L.P., an Oklahoma limited partnership, Plaintiff/Appellant,**

v.

**KEN LASTER COMPANY, an Oklahoma corporation, Defendant/Appellee,**

v.

**Royce Wright, General Partner of Highland Crossing, L.P., Third Party Defendant.**

**No. 107,196.**

Court of Civil Appeals of Oklahoma, Division No. 3.

June 25, 2010.

Certiorari Denied Oct. 11, 2010.

Kenneth M. Smith, Riggs, Abney, Neal, Turpen Orbison & Lewis, Tulsa, OK, for Plaintiff/Appellant.

Joe M. Fears, Barber & Bartz, Tulsa, OK, for Defendant/Appellee.

BAY MITCHELL, Judge.

¶1 Highland Crossing, L.P., Plaintiff/Appellant ("Owner"), seeks review of an order confirming an arbitration award in favor of Defendant/Appellee Ken Laster Company ("Subcontractor").[1] The trial court denied

---

**1.** The trial court entered an Order Certifying Final Judgments on May 29, 2009, certifying two judgments as final pursuant to 12 O.S.2001 § 994(A). The two judgments so certified were

Owner's Petition to Vacate the arbitration award and granted Subcontractor's Cross–Application for Order Confirming Arbitration Award against Owner.

¶2 Owner was a developer of a construction project in Sand Springs, Oklahoma, which secured the services of Texas BBL, L.P. ("General Contractor"). In furtherance of this project, in August 2005, Owner entered into a written contract ("Contract") with General Contractor for the construction of multi-family apartments. This Contract contained an express agreement to arbitrate "any claim arising out of or related to the Contract." Subsequently, in furtherance of the apartment construction project, General Contractor entered into a subcontract agreement ("Subcontract") with Subcontractor in September 2005 whereby Subcontractor agreed to perform the dirt work, underground utilities and infrastructure work for a lump sum price of $825,384. The Subcontract expressly included an agreement to arbitrate "in the same manner and under the same procedure as provided in the Contract." The construction project was completed in the spring of 2007. During the course of construction, Subcontractor submitted claims to the General Contractor, some of which were denied. In 2007, Subcontractor commenced an arbitration proceeding against General Contractor seeking to recover over $200,000 it claimed remained due pursuant to the Subcontract. Later, Subcontractor filed a motion to join Owner in the arbitration to which Owner filed an objection on the basis that Owner had "no known contract with any of the parties" that would require Owner's participation in arbitration.[2] After Subcontractor filed a response to Owner's objection, the arbitrator held a hearing then ruled in Subcontractor's favor, ordering that Owner be joined as an additional party.

¶3 Arbitration hearings were held in December 2007 and January 2008. The arbitrator entered his award on April 28, 2008 (and modified on May 27) which determined that Subcontractor was entitled to judgment against Owner in the amount of $67,940.75 plus reasonable attorney fees of $50,000 and expenses in the amount of $11,000. Additionally, the arbitrator awarded Subcontractor $3,700 against General Contractor. Owner was also ordered to pay the administrative fees for the arbitration and the expenses and compensation of the arbitrator. Owner thereafter filed its Petition to Vacate the arbitration award in the district court based upon the lack of an agreement to arbitrate claims of the Subcontractor pursuant to 12 O.S. Supp.2008 § 1874*(a)(5)*. Ultimately, the trial court confirmed the modified arbitration award and entered judgment against Owner in the amount of $67,940.75, with interest, together with arbitration attorney fees in the amount of $50,000 and arbitration expenses of $22,097.67. The trial court further found Subcontractor entitled to an award of reasonable attorney fees incurred in the trial court proceeding in accordance with 12 O.S. Supp. 2008 § 936 and costs pursuant to 12 O.S.2001 § 928.

¶4 The only issue on appeal is whether the Owner was subject to an agreement to arbitrate upon which the arbitration award could be based.[3] We hold that under the facts of this case, Owner was a party to an agreement to arbitrate the disputes arising from the Contract and Subcontract, and the trial court correctly confirmed the arbitration award.

as follows: the Journal Entry of Judgment filed February 6, 2009 and the Agreed Journal Entry of Judgment as to fees and costs filed February 25, 2009. Each of these Orders was attached to Owner's Petition in Error.

**2.** In its Petition to Vacate, Owner specifically points to the absence of any agreement to arbitrate between itself and Subcontractor, while it is silent on the fact of its agreement to arbitrate disputes in its Contract with General Contractor.

**3.** Subcontractor contends Owner waived its objection to arbitration and/or independent appel-

late review by conduct manifesting consent to having the arbitrator decide the issue of arbitrability. The record reflects that Owner timely raised its objection to arbitration at the commencement of proceedings in conformance with *12 O.S. § 1874*(A)(5) and therefore, we find no waiver of Owner's objection to arbitrate and/or the right to a *de novo* review. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (holding the arbitrability of a dispute was subject to independent review by the courts).

¶ 5 The interpretation of an arbitration agreement is governed by state law principles of general contract interpretation. *Wilkinson v. Dean Witter Reynolds,* 1997 OK 20, 933 P.2d 878. The courts will read the provisions of a contract in their entirety, *Mortgage Clearing Corp. v. Baughman Lumber Co.,* 1967 OK 232, ¶ 11, 435 P.2d 135, 138, to give effect to the intention of the parties as ascertained from the four corners of the contract, and where the language is ambiguous, it will be interpreted in a fair and reasonable sense. *Id.,* at ¶ 13, 435 P.2d at 139.

¶ 6 Generally, the courts will enforce arbitration agreements according to the terms of the parties' contract, as arbitration "is a matter of consent, not coercion." *Volt Info. Sciences, Inc. v. Bd. Of Trustees,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). To ensure that the parties have consented to arbitration, the courts will decide whether there is a valid enforceable arbitration agreement, whether the parties are bound by the arbitration agreement, and whether the parties agreed to submit a particular dispute to arbitration. *Oklahoma Oncology & Hematology, P.C. v. U.S. Oncology, Inc.,* 2007 OK 12, ¶ 22, 160 P.3d 936, 944–45; *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). There is a "strong presumption in favor of arbitration." *Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co.,* 1997 OK CIV APP 58, ¶ 24, 947 P.2d 594, 599. "Ambiguities are resolved in favor of finding the dispute is arbitrable." *Farrell v. Concept Builders, Inc.,* 2008 OK CIV APP 34, ¶ 7, 208 P.3d 483, 485; *City of Muskogee v. Martin,* 1990 OK 70, ¶ 8, 796 P.2d 337, 340 ("Arbitration should be allowed unless the court can say with 'positive assurance' the dispute is not covered by the arbitration clause."). The question as to the existence of a valid, enforceable agreement to arbitrate is a question of law reviewed *de novo. Oklahoma Oncology & Hematology, P.C.,* ¶ 19 at p. 944.

¶ 7 In Oklahoma, there are limited circumstances set forth by statute under which a party's motion to vacate an arbitration award may be granted. See 12 O.S. Supp.2008 § 1874(A). That statute provides in pertinent part as follows:

(A.) Upon an application and motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:
. . .
(5.) **There was no agreement to arbitrate,** unless the person participated in the arbitration proceeding without raising the objection under subsection C of Section 16 of this act not later than the beginning of the arbitration hearing; . . . .

(Emphasis added). 12 O.S. § 1874(A)(5).

¶ 8 In this case, Owner argues it did not sign and was not a party to the Subcontract, and thus should not be required to arbitrate disputes arising from the Subcontract. Owner would apparently have us ignore its Contract with General Contractor, which binds Owner to arbitrate "any claim arising out of or related to the Contract." That Contract demonstrates Owner's agreement to arbitrate claims **related to** the construction project.

¶ 9 The parties' respective contractual obligations, the facts giving rise to the dispute, and the interrelationship of relevant contractual provisions in both contracts demonstrate the inseparable nature of Subcontractor's claims against General Contractor and Owner. Pursuant to the Contract, Owner agreed to pay General Contractor for the cost of construction, and the Contract expressly contemplates the subcontracting of work as part of the project. The Contract specifies that "[e]ach subcontract agreement . . . shall allow to the Subcontractor . . . the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner." Further, we note "[t]he very concept of a subcontract is that of an agreement by which performance of a portion of the prime contract is delegated to another." 6 Philip L. Bruner & Patrick J. O'Connor, *Bruner & O'Connor on Construction Law* § 20:32 (May 2010).

¶ 10 General Contractor's primary defense to non-payment of Subcontractor's claims

was on the basis of the terms of the Subcontract, which included a provision rendering Owner's payment to General Contractor a condition precedent to General Contractor's obligation to pay Subcontractor. The parties refer to this provision as a "pay-if-paid provision." In the course of the arbitration proceeding, General Contractor asserted a crossclaim for indemnity against Owner, asking that any amounts still owing to Subcontractor on the project should be paid by Owner to General Contractor for payment to Subcontractor. Given the interdependent contractual obligations of the parties, relief could not be afforded Subcontractor unless and until Owner was joined as a party in the arbitration.

¶ 11 Several specific provisions in both contracts demonstrate the interrelationship between the parties and their respective contractual duties and obligations. The Contract entered into by Owner and General Contractor includes an **agreement to arbitrate "[a]ny claim arising out of or related to the Contract."** The Subcontract expressly provides, "Subcontractor agrees to abide by the terms, conditions and covenants of the Contract Documents between the Owner and [General Contractor].... The Contract Documents consist of this AGREEMENT, ... the Agreement between Owner and [General Contractor], and any and all conditions of the Contract (General, Supplementary and other)...." The Subcontract further specifies that "in the event the Contractor becomes a party to binding arbitration arising out of or relating to the Contract, which binding arbitration involves the work required under this Subcontract, Contractor shall have the right, in its sole discretion to join Subcontractor to such binding arbitration."[4] Finally, the agreement-to-arbitrate provision in the Subcontract expressly provides "[a]ny controversy of claim between [General Contractor] and the Subcontractor arising out of or related to this Subcontract, or the breach thereof, shall be settled by arbitration, **which shall be conducted in the same manner and under the same procedure as provided in the Contract with respect to claims between the Owner and [General Contractor] ...."**

■ ¶ 12 "Where two contracts, not executed at the same time, refer to the same subject matter and show on their face that one was executed to carry out the intent of the other, it is proper to construe them together as if they were one contract." *Bixler v. Lamar Exploration Co.*, 1987 OK 15, ¶ 5, 733 P.2d 410, 411–12. It is clear that the parties' respective contracts relate to the same construction project, reference the parties' respective related duties and obligations, and were both executed to carry out the mutual intent of completion of the project. Further, the Subcontract expressly incorporates the Contract, binding Subcontractor to the terms and conditions thereto. We therefore interpret the express contractual language of both contracts together, the meaning of which is plain and unambiguous. Had Owner intended to exclude Subcontractors from his agreement to arbitrate, the Contract's arbitration provision should have included express language of limitation as to such claims or parties.[5] The express arbitration provision in the Subcontract, the broad language of the arbitration provision in the Contract, coupled with the Subcontract's express reference to that agreement are substantially sufficient to permit a finding that all three parties intended to arbitrate all disputes arising out of the construction project.[6] Thus, Owner's contention that there

---

4. General contractor raised no objection to the joinder of Owner as an additional party to the arbitration proceeding and, in fact, filed a crossclaim against Owner for indemnity.

5. In fact, § 4.64 of the General Conditions of the Contract expressly prohibits the joinder of the architect in arbitration. That provision additionally expressly prohibits joinder of "parties *other than* the Owner, Contractor, a separate contractor as described in Article 6 **and other persons substantially involved in a common question of**

fact or law whose presence is required if complete relief is to be accorded in arbitration." (Emphasis added).

6. As a general rule, broad general incorporation language in a construction contract is sufficient to capture an arbitration provision. 6 Philip L. Bruner & Patrick J. O'Connor, *Bruner & O'Connor on Construction Law* § 20:32 (May 2010); *See Carter v. Schuster*, 2009 OK 94, ¶ 14, 227 P.3d 149, 153 (finding incorporation by refer-

was no agreement from which it could be compelled to arbitrate is unpersuasive.[7]

¶ 13 Upon review of the facts of the dispute, the terms of the respective construction contracts revealing all parties' agreement to arbitrate, we affirm the trial court's Order Confirming the Arbitration Award.

¶ 14 AFFIRMED.

JOPLIN, P.J., and BELL, V.C.J., concur.

ence as one of five recognized theories for binding nonsignatories to arbitration agreements).

7. Subcontractor asserts additional theories (i.e., equitable estoppel, agency, direct benefits doctrine, and third-party beneficiary theories) under which it contends it is entitled to arbitration of its claims against Owner. Because our review of the Contract and Subcontract satisfies us that all parties agreed to arbitrate, we need not determine if the arbitration award would be confirmed under the other asserted theories.