2010 OK CIV APP 18

**WILLCO ENTERPRISES, LLC,**
**Plaintiff/Appellant,**

v.

**Conchita L. WOODRUFF and**
**Victore Insurance Company,**
**Defendant/Appellee.**

**Conchita L. Woodruff, Counter–Claimant/Third–Party Plaintiff/Plaintiff/Appellee,**

v.

**Willco Enterprises, LLC and Donny Williamson, Counter–Defendants/Third–Party Defendants/Appellants.**

No. 106,237.

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 22, 2010.

David H. Herrold, Monica L. Maple, Andrew T. Harrison, Emily M. Jones, Herrold Herrold & Co., Lawyers, P.C., Tulsa, OK, for Counter–Claimant/Third–Party Plaintiff/Appellee.

Brian L. Mitchell, Chad M. Neuens, M. Scott Hall, Amy E. Hampton, Glass Wilkin, P.C., Tulsa, OK, for Counter–Defendants/Third–Party Defendants/Appellants.

BAY MITCHELL, Chief Judge.

¶ 1 In a dispute arising out of a residential construction contract, Plaintiff/Counter–Defendant/Appellant Willco Enterprises, L.L.C. (Willco) and Third–Party Defendant/ Appellant Donny Williamson (Williamson), appeal the trial court's order denying their motion to compel arbitration. Willco and Williamson (Appellants) argue the Uniform Arbitration Act, 12 O.S. Supp.2006 §§ 1851–1881 (the New Act), supplants the six-factor test set forth in *Northland Ins. Co. v. Kellogg*, 1995 OK CIV APP 84, 897 P.2d 1161, for determining whether a party has waived its right to compel arbitration under 15 O.S.1991 §§ 801–818 (the Old Act). Appellants thus insist it was error for the trial court to apply the *Northland* analysis in ruling on their motion to compel. In the alternative, Appellants argue if *Northland* does survive under the New Act, Defendant/Counter–Claimant/Third–Party Plaintiff/Appellee Conchita L. Woodruff (Woodruff) failed to meet her burden of proof. Even assuming, as did the trial court, five of the six *Northland* factors survive under the New Act, we find Woodruff's evidence insufficient to show Appellants waived their right to compel arbitration in this case. We REVERSE the decision of the trial court.

### Facts and Procedural History

¶ 2 Williamson is the owner and managing member of Willco, a homebuilding company based in Tulsa, Oklahoma. In 2006, Woodruff purchased from Willco certain real property in Tulsa and retained Willco to construct a residence on the site. Toward that end, the parties entered a Real Estate Purchase Agreement (Agreement) May 12, 2006. The Agreement includes both a clause mandating arbitration of all disputes between the parties, which the parties were required to initial at execution, and an anti-waiver provision.[1] The arbitration clause expressly pro-

1. The arbitration and waiver provisions of the Agreement state in relevant part and with emphasis added:

   § 10. Arbitration of Disputes. Any and all claim(s), dispute(s) and controversy(ies) of every kind and nature between the Parties to this Agreement, including but not limited to: (i) the construction of the Dwelling as set forth herein; (ii) the course of dealing by and between the Parties to this Agreement; (iii) the existence, construction, validity, interpretation or meaning of this Agreement; (iv) the Parties' performance, non-performance, breach, enforcement, operation, continuance or termination under this Agreement; (v) Builder's satisfactory completion of items contained in the Punchlist, if any, refer-

vides nothing contained therein "shall be deemed to limit or restrict Builder's right to file a materialmen's or mechanics' lien against the Real Property or prosecute foreclosure proceedings based thereupon," and the waiver provision declares "[f]ailure by any Party to enforce or exercise rights under this Agreement ... shall not affect the right of any Party to exercise or enforce any such rights or require such performance at any time thereafter."

¶ 3 In building Woodruff's home, Appellants claim they furnished material, labor, and equipment through January 2008, by which point Woodruff, who had taken up residence in the home, allegedly ceased making required payments under the Agreement. In response, Willco filed a verified lien statement with the Tulsa County Clerk January 22, 2008, in which it declared Woodruff had an outstanding debt of $90,617.38 plus interest for labor, material, and equipment. Willco amended its materialmen's and mechanics' lien February 26, 2006, to increase the amount of Woodruff's alleged indebtedness to $106,708.25 plus interest. Prosecuting foreclosure actions being expressly permitted by the Agreement, Willco initiated the present lawsuit March 5, 2008 by filing with the trial court a petition asserting breach of contract and seeking to foreclose the amended lien or, in the alternative, to recover in *quantum meruit*.[2]

¶ 4 Woodruff filed an answer March 27, 2008, in which she asserted fourteen counterclaims against Willco and advanced two third-party claims against Williamson in his individual capacity, thus bringing him into the lawsuit as a third-party defendant. On the same day as her answer, prior to conducting any discovery in the case, Woodruff separately filed both a motion for summary judgment and an offer to allow judgment.

¶ 5 Willco replied to Woodruff's counterclaims and Williamson answered her third-party petition April 7, 2008. In neither of these responsive pleadings did Appellants assert their contractual right to arbitrate the counter- and third-party claims as an affirmative defense.

¶ 6 On April 11, 2008, the president of 1st Bank of Oklahoma moved to quash Woodruff's subpoena *duces tecum*. Three days later, Appellants together filed a Rule 13(D) motion regarding Woodruff's motion for summary judgment,[3] and followed that with a

---

enced in § 5 above; (vi) all allegations of liability between the Parties hereto, including matters arising by virtue of the relationship evidenced by this Agreement between Parties, or otherwise; and (vii) all allegations of liability, tortious conduct, misrepresentation, concealment, fraud, negligence, etc., shall be submitted to binding arbitration ... The Parties hereby stipulate and agree that the provisions of this section shall be a complete defense to any suit, action or proceeding instituted in any federal, state or local court or before any administrative tribunal with respect to any controversy, dispute or claim arbitrable as set forth herein. Furthermore, the obligations inuring to each Party under this section to submit any and all claim(s), dispute(s) and controversy(ies) to binding arbitration shall survive the execution and closing of the transaction contemplated by this Agreement. *Nothing contained in this § 10 shall be deemed to limit or restrict Builder's right to file a materialmen's or mechanics' lien against the Real Property or prosecute foreclosure proceedings based thereupon.*
I have read and understand the aforestated provisions with respect to my duty to submit ALL disputes relative to this Agreement to binding arbitration:
Initials: /s/CLW /s/DW
§ 18. Waiver. *Failure by any Party to enforce or exercise rights under this Agreement,* or to require

performance by the other Party hereunder, *shall not affect the right of any Party to exercise or enforce any such rights or require such performance at any time thereafter,* nor shall the waiver by any Party of a breach of any provision of this Agreement constitute a waiver of any succeeding breach of the same or any other provision, nor shall such act constitute a waiver of the provision itself.

2. In addition to Woodruff, Willco named Wachovia Mortgage Corporation as a defendant in its original petition. Willco later filed an unopposed motion for leave to dismiss Wachovia Mortgage Corporation and substitute Victore Insurance Company as defendant. The trial court granted the unopposed motion June 4, 2008.

3. Rule 13(D) of the Rules for the District Courts of Oklahoma provides in its entirety:

Should it appear from an affidavit of a party opposing the motion [for summary judgment] that for reasons stated the party cannot present evidentiary material sufficient to support the opposition, the court may deny the motion for summary judgment or summary disposition without prejudice or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may

combined motion to quash Woodruff's subpoena and/or for protective order.

¶ 7 On April 24, 2008, Woodruff filed separate responses in opposition to both motions to quash. The following week, she objected to Appellants' Rule 13(D) motion. On May 6, 2008, Woodruff subpoenaed for deposition both Williamson and an individual named Chris Burdan.

¶ 8 On or about May 13, 2008, Appellants served Woodruff with one set of discovery requests to which Woodruff never responded; she filed a motion for protective order instead. Appellants filed an unopposed motion for leave to dismiss and substitute parties May 30, 2008.[4] Appellants' counsel filed a motion to withdraw June 9, 2008, which the trial court granted two days later. Appellants' current counsel filed their entries of appearance the same day.

¶ 9 According to the parties' briefs on appeal and the trial court's docket sheet, the aforementioned motions, requests, and pleadings comprise all of the activity that took place during the three-and-a-half months after Willco's March 5, 2008 petition but prior to Appellants' June 20, 2008 motion to compel arbitration.[5]

¶ 10 The trial court denied Appellants' request to compel arbitration of Woodruff's counterclaims and third-party claims, declaring in its August 20, 2008, order:

1. The Court FINDS Woodruff is bound by the contractual provision to arbitrate this dispute. However, the Court FINDS Willco has waived its right to arbitrate pursuant to the analysis articulated in *Northland Ins. Co. v. Kellogg*, 1995 OK CIV APP 84 [897 P.2d 1161], which the Court finds has not been displaced by Oklahoma's Uniform Arbitration Act of 2005, 12 O.S.

Supp.2005 §§ 1851 *et seq.* (the "Arbitration Act").

2. The Court FURTHER FINDS, in applying the 6–factor test of *Northland* herein (subparts (a)-(f) herein), that: (a, b) Willco filed this action without providing notice of arbitration or seeking a stay of the proceedings and affirmatively sought relief from the Court including conducting discovery, inconsistent with the right to arbitrate, (c) Willco's delay in seeking to compel arbitration was not a long delay, but the delay was indicative of actions inconsistent with the right to arbitrate, (d) there has been substantial work performed in the action before the District Court, (e) the fifth factor of the *Northland* test (engagement in discovery proceedings unavailable in arbitration) is inapplicable herein, and (f) no showing has been made that there has been a substantial prejudice visited upon Woodruff if arbitration were compelled—whatever prejudice there might be to Woodruff is slight since work that has been performed would be performed in arbitration.

The trial court further found "Woodruff's third-party claims against Williamson are subject to the arbitration provision of the parties' Residential Construction Agreement at issue herein, and should this decision be reversed by final order of an appellate court and arbitration later compelled, any such claims against Williamson shall be compelled to arbitration as well." [6] The trial court stayed the action pending appeal.

¶ 11 Pursuant to 12 O.S. Supp.2006 § 1879(A)(1), Willco and Williamson appeal the trial court's order denying their motion to compel arbitration of Woodruff's counterclaims and third-party claims. Appellants argue the *Northland* analysis does not sur-

---

make such other order as is just. A motion filed pursuant to this paragraph shall not be deemed a consent to the exercise by the court of jurisdiction over the party, or a waiver of the right to file a motion to dismiss the action.

4. *See supra* note 2.

5. Appellants filed a brief in support of their motion to compel arbitration July 28, 2008. Woodruff filed three additional pleadings August 12,

2008, the day prior to the trial court's hearing on Appellants' motion to compel arbitration. In the first such pleading, Woodruff sought leave to amend her claims against Willco and Williamson; in the second, to join persons needed for just adjudication; and in the third, to add another third-party defendant.

6. Woodruff did not appeal this ruling.

vive under the New Act. In the alternative, Appellants insist it was error for the trial court to hold Woodruff's evidence sufficient under *Northland* to prove Appellants had waived their contractual right to compel arbitration of Woodruff's counterclaims and third-party claims.

### Standard of Review

¶ 12 An order denying a motion to compel arbitration is an interlocutory order appealable by right, which we review *de novo. See* 12 O.S. Supp.2006 § 1879(A)(1); *see also Thompson v. Bar–S Foods Co.,* 2007 OK 75, ¶ 9, 174 P.3d 567, 572. "The determination of whether a party waived its right to compel arbitration is a mixed question of law and fact." *Gish v. ECI Servs. of Okla., Inc.,* 2007 OK CIV APP 40, ¶ 25, 162 P.3d 223, 230; *see also Booker v. Sumner,* 2001 OK CIV APP 22, ¶ 14, 19 P.3d 904, 906. "The review of whether the trial court applied the correct legal standards is a de novo review for correctness ... while the review of the trial court's determination of the existence of facts supporting waiver is deferential in nature." *Northland Ins. Co. v. Kellogg,* 1995 OK CIV APP 84, ¶ 5, 897 P.2d 1161, 1162 (internal citations omitted).

### Analysis

¶ 13 Oklahoma law reflects this State's strong public policy in favor of arbitration. *See* 12 O.S. Supp.2006 § 1857(A); *see also Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co.,* 1997 OK CIV APP 58, ¶ 24, 947 P.2d 594, 599. Section 1857(A) of the New Act declares arbitration agreements "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." This provision reveals "a clear legislative intent that any disputes arising from the interpretation or application" of such agreements "shall have an immediate and speedy resolution by required arbitration." *Voss v. City of Oklahoma City,* 1980 OK 148, ¶ 8, 618 P.2d 925, 928; *see Bruner v. Timberlane Manor Ltd. P'ship,* 2006 OK 90, ¶ 23, 155 P.3d 16, 25 (recognizing § 1857(A) "is a clear expression of Oklahoma's policy favoring arbitration agreements.").

¶ 14 "[C]ourts generally look with favor upon arbitration provisions as a shortcut to substantial justice with a minimum of court interference." *Long v. DeGeer,* 1987 OK 104, ¶ 5, 753 P.2d 1327, 1328; *see also Rollings v. Thermodyne Indust., Inc.,* 1996 OK 6, ¶ 13, 910 P.2d 1030, 1033 (stating courts favor arbitration because it allows for speedy and less-costly resolution of conflicts). Indeed, the Supreme Court has held courts should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Bar–S Foods,* ¶ 9, 174 P.3d at 572 (citing *Fleming Cos., Inc. v. Tru Discount Foods,* 1999 OK CIV APP 18, ¶ 16, 977 P.2d 367, 371 (itself citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960))). "The interpretation of an arbitration agreement is governed by general state-law principles of contract interpretation." *Bar–S Foods,* ¶ 18, 174 P.3d at 574 (internal quotations omitted) (citing *Wilkinson v. Dean Witter Reynolds, Inc.,* 1997 OK 20, ¶ 9, 933 P.2d 878, 880). Courts "should ... resolve[ ] in favor of coverage" any doubts concerning the arbitrability of a particular dispute. *City of Muskogee v. Martin,* 1990 OK 70, ¶ 8, 796 P.2d 337, 340 (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)); *see also Rogers v. Dell Computer Corp.,* 2005 OK 51, ¶ 17, 138 P.3d 826, 830 (declaring "ambiguity falls on the side of the existence of an agreement to arbitrate.").

¶ 15 The Supreme Court also has recognized that in situations "where arbitration has been contracted for it constitutes a substantive and mandatory right." *Voss,* ¶ 5, 618 P.2d at 928. The right to compel arbitration is thus an affirmative defense to an action on contract. *See Shaffer v. Jeffery,* 1996 OK 47, ¶ 6, 915 P.2d 910, 913. Although "a party may waive its contractual right to compel arbitration," *id.,* such waiver "is not easily inferred" and "[t]he party asserting waiver has the burden of proof regarding that issue." *Northland,* ¶ 7, 897 P.2d at 1162 (citing *Carcich v. Rederi A/B Nordie,* 389

F.2d 692, 696 (2d Cir.1968) and *Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 806 F.2d 291, 293–94 (1st Cir.1986)).

¶ 16 The *Northland* Court analyzed the waiver issue under the Old Act, which was then in effect.[7] Finding "scant Oklahoma law on the subject," it sought guidance from federal decisions construing the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–15 (1988).[8] Noting the lack of a "uniform test ... for the determination of waiver," the *Northland* Court adopted the following six-factor test, which "essentially encompasses the various tests adopted in most jurisdictions":

(1) whether a party has taken actions that are inconsistent with a right to arbitrate; (2) whether the issue of arbitration was raised only after there had been significant preparation for litigation; (3) whether the trial date is near or there has been a long delay in raising the issue of contractual arbitration rights; (4) whether the party invoking the arbitration right has filed pleadings in the litigation without seeking a stay of the proceedings; (5) whether the party seeking arbitration has engaged in discovery proceedings that are not available in arbitration or participated in other "important intervening steps;" and, (6) whether the opposing party has been prejudiced by the delay.

*Northland,* ¶ 8, 897 P.2d at 1162 (citing *Peterson v. Shearson/American Express, Inc.,* 849 F.2d 464, 467 (10th Cir.1988)).

¶ 17 Appellants first argue the *Northland* analysis does not survive under the New Act because the New Act contains a waiver provision whereas the Old Act did not. Appellants next contend no waiver occurred under the New Act. They base this argument on both the language of the Agreement and their impression § 1855 expresses a "predi-

lection ... against involuntary waivers" and "appears to require" arbitration waivers to be "clear, knowing and intentional" and/or "unequivocal" to be effective. In the alternative, Appellants insist Woodruff's evidence is insufficient to prove they waived their right to arbitration under *Northland.*

¶ 18 Appellants' observation the New Act contains a waiver provision does little to advance their claim the New Act renders the *Northland* analysis obsolete. The applicable waiver provision of the New Act, § 1855(B)(1), merely declares parties to arbitration agreements may not "[w]aive or agree to vary the effect of the requirements of ... subsection A of Section 1857" until "a controversy arises that is subject to an agreement to arbitrate." Section 1857(A) establishes arbitration agreements are "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." Read together, these provisions permit parties to waive their contractual right to arbitrate but only *after* an arbitrable dispute has arisen. They do not establish the factors or guiding principles a court should consider in determining whether and under what circumstances waiver of arbitration occurs. Because the New Act provides no more direction on the issue of waiver than the Old Act, we reject Appellants' argument it supercedes *Northland.*

¶ 19 That said, like the trial court, we conclude the fifth *Northland* factor—namely, "whether the party seeking arbitration has engaged in discovery proceedings that are not available in arbitration or participated in other 'important intervening steps' "—is no longer relevant to the waiver analysis. While only very limited discovery procedures were available under both the Old Act and the FAA,[9] arbitrators have much broader

---

**7.** The New Act superceded the Old Act effective January 1, 2006. *See* 12 O.S. Supp.2005 § 1854.

**8.** In *Southland Corp. v. Keating,* 465 U.S. 1, 13–16, 104 S.Ct. 852, 859–861, 79 L.Ed.2d 1 (1984), the United States Supreme Court ruled invalid a state law limiting the applicability of arbitration in a franchise contract and, by that ruling, made applicable to both federal and state courts the body of substantive federal law construing and enforcing contracts that fall within the FAA.

**9.** Section 7 of the FAA, 9 U.S.C.A. § 7, provides in pertinent part:

The arbitrators ... may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case .... if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbi-

discovery-related powers today. Under the Old Act, arbitrators could do little more than issue "subpoenas for the attendance of witnesses and for the production of books, records, documents and other evidence" at the arbitration hearing.[10] Indeed, only if a particular witness could not be subpoenaed or was unable to attend the hearing could an arbitrator, upon application of a party, "authorize a deposition to be taken" of that witness. It follows that, under the Old Act, most, if not all, discovery requests were classifiable as preparation for litigation and inconsistent on their face with pursuit of the right to arbitrate. Thus, one of the primary considerations in any pre–2006 waiver analysis was whether the party seeking arbitration had taken advantage of trial-related discovery procedures prior to filing a motion to compel, thus gaining an unfair advantage in the arbitration process and causing prejudice to the opposing party.

¶ 20 Discovery powers available to arbitrators under the New Act are virtually identical to those available to trial judges. Arbitrators now have authority to allow such methods of discovery as they deem appropriate; permit the taking of depositions regardless of witnesses' availability to attend arbitration hearings; issue protective orders; demand compliance with their discovery-related orders; and take action against noncomplying parties.[11] For this reason, as the trial court conceded in its opinion below, the fifth factor of *Northland*—"whether the party seeking arbitration has engaged in discovery proceedings that are not available in arbitration or participated in other important intervening steps"—is irrelevant to a waiver analysis conducted under the New Act.

¶ 21 With this in mind, we review *Northland* and its progeny to guide us in determining whether Appellants waived their contractual right to arbitration in this case. The relevant facts in *Northland* are as follows: *Northland*, the party seeking arbitration, specifically requested a jury trial in its petition. Without seeking a stay, *Northland* subjected Kellogg, the party opposing arbitration, to "considerable" discovery requests;

---

trators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

**10.** Section 807 of the Old Act provides in pertinent part:

A. The arbitrators may issue subpoenas for the attendance of witnesses and for the production of books, records, documents and other evidence, and shall have the power to administer oaths. Subpoenas so issued shall be served and upon application to the court by a party or the arbitrators, enforced in the manner provided by law for the service and enforcement of subpoenas in a civil action.
B. On application of a party and for use as evidence, the arbitrators may authorize a deposition to be taken of a witness who cannot be subpoenaed or is unable to attend the hearing, in the manner and upon the terms designated by the arbitrators under the laws for such procedure of this state.

**11.** Section 1868 of the New Act provides in pertinent part:

A. An arbitrator may issue a subpoena for the attendance of a witness and for the production of records and other evidence at any hearing and may administer oaths.....
B. In order to make the proceedings fair, expeditious, and cost-effective, upon request of a party to or a witness in an arbitration proceeding, an arbitrator may permit a deposition of any witness to be taken for use as evidence at the hearing, including a witness who cannot be subpoenaed for or is unable to attend a hearing. The arbitrator shall determine the conditions under which the deposition is taken.
C. An arbitrator may permit such discovery as the arbitrator decides is appropriate in the circumstances, taking into account the needs of the parties to the arbitration proceeding and other affected persons and the desirability of making the proceeding fair, expeditious, and cost-effective.
D. If an arbitrator permits discovery under subsection C of this section, the arbitrator may order a party to the arbitration proceeding to comply with the arbitrator's discovery-related orders, issue subpoenas for the attendance of a witness and for the production of records and other evidence at a discovery proceeding, and take action against a noncomplying party to the extent a court could if the controversy were the subject of a civil action in this state.
E. An arbitrator may issue a protective order to prevent the disclosure of privileged information, confidential information, trade secrets, and other information protected from disclosure to the extent a court could if the controversy were the subject of a civil action in this state.

filed a motion for summary judgment; and participated in a pretrial conference. It was not until **ten months** into the litigation that *Northland* finally moved to compel arbitration. Citing *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.,* 754 F.2d 457, 466 (2d Cir.1985), *cert. denied,* 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985), the Court reasoned such "tactics of delay or harassment" prejudiced the opposing party and caused him expense. Even though the trial court had yet to set a trial date, the Court held *Northland* had waived its right to arbitration because "there had been significant · preparation for litigation" and *Northland's* litigation actions—in particular, its motion for judgment on the merits—were "inconsistent with the right to arbitrate."

¶ 22 In *Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co.,* 1997 OK CIV APP 58, 947 P.2d 594, defendant Continental *immediately* raised its contractual right to arbitration as an affirmative defense in its answer. After the trial court rejected its two applications to compel arbitration and stay proceedings (one under the FAA and one under the Old Act), Continental appealed. The Court, stressing both the strong presumption in favor of arbitration as well as appellee's failure to show prejudice, found all six *Northland* factors weighed in Continental's favor and held Continental did not waive its right to arbitrate the dispute.

¶ 23 In *Booker v. Sumner,* 2001 OK CIV APP 22, 19 P.3d 904, Booker, the party opposing arbitration, initiated the court action. Sumner, the party seeking to compel arbitration, answered without asserting its arbitration rights. At one point during Booker's deposition of him, Sumner mentioned the arbitration clause but did not demand arbitration. Sumner continued to participate in discovery after that by deposing Booker and responding to Booker's interrogatories, requests for admissions, and requests for production of documents. It was not until *eighteen months* into the litigation, in response to Booker's motion for summary judgment, that Sumner first asserted his right to arbitrate. The trial court granted Booker's motion for summary judgment and denied Sum-

ner's motion to compel. On appeal, the Court reasoned:

> Sumner's knowing acquiescence in continuation of the litigation process is inconsistent with the right to arbitrate. There was a long delay in the request and the case had been presented for final disposition by Booker's motion for summary judgment. . . .
>
> . . . [Sumner] had engaged in discovery proceedings through depositions and interrogatories. If binding arbitration [were] imposed, Booker would be prejudiced by the excessive loss of time required to get a determination of his rights, and by the expense of litigation which would have been obviated by Sumner's timely demand for arbitration.

*Id.* ¶¶ 19–20, 19 P.3d at 907. Finding Booker satisfied all six *Northland* factors, the Court affirmed the trial court's denial of Sumner's motion to compel arbitration.

¶ 24 In *Gish v. ECI Servs. of Okla., Inc.,* 2007 OK CIV APP 40, 162 P.3d 223, ECI answered Gish's petition, exchanged written correspondence with opposing counsel, and participated in discovery, all without demanding mandatory arbitration under the contract. ECI did not file its motion to compel until *fourteen months* after Gish initiated the lawsuit. Four months prior to trial and six years after the lawsuit began, ECI renewed its motion to compel. Citing *Booker,* the Court found the actions ECI took prior to filing its initial motion to compel were:

> inconsistent with enforcement of what ECI believes to be a binding agreement to arbitrate the dispute. By its silence, ECI allowed the wheels of the litigation to turn, causing [Gish] to expend time, energy and resources toward trial preparation. Opportunity during the intervening fourteen months was afforded ECI to raise the arbitration defense.

*Id.* ¶ 28, 162 P.2d at 230. The Court affirmed the denial of ECI's motion to compel.

¶ 25 In *Green Tree Servicing, L.L.C. v. Fisher,* 2007 OK CIV APP 50, 162 P.3d 944, a case brought under the New Act, the promissory note and security agreement Fisher executed to Green Tree contained an arbitra-

tion clause providing all disputes arising from or related to the parties' agreement were subject to binding arbitration. Much like the Agreement in the case before us on appeal, the mandatory arbitration provision at issue in *Green Tree* made an exception for actions in foreclosure.[12] Nine months after Fisher defaulted on the promissory note and sought protection in bankruptcy, Green Tree filed a petition to foreclose its security interest and for replevin. In its answer and counterclaim, Fisher sought damages for Green Tree's alleged violations of the bankruptcy injunction. In its reply, filed approximately *nine weeks* after its own petition was filed, Green Tree asserted arbitration as an affirmative defense for the first time.

¶ 26 The trial court reasoned "Green Tree's filing of a foreclosure and replevin action was specifically permitted by the arbitration clause, and did not constitute a waiver of its right to arbitration. Furthermore, the record does not support a conclusion that Green Tree waived arbitration by failing to timely invoke the clause as an affirmative defense." *Id.*, ¶ 10, 162 P.3d at 946. Accordingly, the trial court found "no reason for the application of waiver, abandonment, or estoppel" in the case. *Id.* Because Green Tree filed its action *after* its contractual relationship with Fisher was terminated by discharge in bankruptcy, however, the Court reasoned "the acts giving rise to the cause of action did not have their roots in the former contract, but in alleged behavior that oc-

curred *subsequent* to the contract's termination, and which did not arise as a *natural consequence* of the contract." *Id.*, ¶ 17, 162 P.3d at 948. For this reason, the Court held the arbitration clause inapplicable to Fisher's counterclaim and affirmed the trial court's denial of Green Tree's motion to compel.

¶ 27 Keeping the persuasive authority of these decisions in mind, we apply the surviving *Northland* factors to the facts before us on appeal. The first is whether Appellants' actions were "inconsistent with a right to arbitrate." Because foreclosure actions are specifically authorized by the arbitration clause of the parties' Agreement,[13] filing a foreclosure petition in the trial court was not inconsistent with Willco's contractual right to arbitrate.[14] With the exception of the lone set of discovery requests they served on Woodruff, the remaining pleadings Appellants filed with the trial court—Willco's reply to Woodruff's counterclaims, Williamson's answer to her third-party petition, Appellants' Rule 13(D) motion, and their motion to quash—were defensive in nature, made in direct response to Woodruff's pleadings and discovery requests. Even if it were appropriate under the New Act to classify Appellants' single set of discovery requests as inconsistent with their right to arbitrate, Woodruff never disclosed any information in response to those requests and Appellants likely will be able to serve her with identical requests as part of the arbitration process.

12. The parties' arbitration provision provided, in pertinent part:
    Notwithstanding anything hereunto the contrary, you retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Agreement, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

13. *See supra*, note 1.

14. In addition to the express language of the parties' Agreement, several provisions of the

New Act presuppose actions proceeding simultaneously in the trial court and before an arbitrator. Section 1856(B) provides in part: *"Unless a civil action involving the agreement to arbitrate is pending,* notice of an initial application and motion to the court under the Uniform Arbitration Act must be served in the manner provided by law for the service of a summons in the filing of a civil action."* Section 1857(D) declares: *"If a party to a judicial proceeding* challenges the existence of, or claims that a controversy is not subject to, an agreement to arbitrate, *the arbitration proceeding may continue pending final resolution of the issue by the court,* unless the court otherwise orders."* Finally, § 1858(F) states: *"If a party makes a motion to the court to order arbitration, the court* on just terms *shall stay any judicial proceeding* that involves a claim alleged to be subject to the arbitration until the court renders a final decision under this section."*

For these reasons, Appellants' actions in the trial court were not inconsistent with their right to arbitrate.[15]

¶ 28 For the second *Northland* factor, we must determine whether Appellants raised the issue of arbitration "only after there had been significant preparation for litigation." Because the first and second *Northland* factors depend on much the same evidence, the trial court combined the two in ruling on Appellants' motion to compel, finding "Willco filed this action without providing notice or arbitration or seeking a stay of the proceedings and affirmatively sought relief from the Court including conducting discovery, inconsistent with the right to arbitrate." We disagree.

¶ 29 First, as discussed above, the arbitration clause of the parties' Agreement expressly permits Willco to file an action in foreclosure. Thus, the relief Willco "affirmatively sought" from the trial court—foreclosure of its lien—was not inconsistent with its contractual right to arbitrate. Second, the trial court's categorization of Appellants' discovery request as an affirmative, relief-seeking act is incorrect based on the facts and the law. Woodruff never responded to Appellants' discovery request and, even if she had, under the New Act, Appellants would be entitled to ask her the same questions as part of the arbitration process.

¶ 30 The trial court's emphasis on Willco's failure to provide notice of arbitration or seek a stay of the proceedings when it filed its foreclosure petition is similarly misplaced. Given that foreclosure actions are expressly allowed by the arbitration provision of the parties' Agreement, there was no reason for Willco to provide notice of arbitration or to seek a stay of proceedings when it filed its petition. The earliest point at which it would have been appropriate for Appellants to raise their contractual right to arbitration was in their individual responses to Woodruff's

counterclaims and third-party claims, which they filed April 7, 2008—just *ten weeks* before they moved to compel arbitration. It was Woodruff, through her offensive pleadings, who recast the case from a pure foreclosure action to one involving a variety of other disputes. As long as the case remained a simple foreclosure action, the parties' contractual right to arbitration did not arise and there was no need for Appellants to compel arbitration or seek a stay of proceedings.[16]

¶ 31 Moreover, it is difficult to envision a procedural scenario in which the parties could be said to have undertaken "significant preparation for litigation" where, as here, the trial court has yet to issue a scheduling order. To the extent any of Appellants' actions before the trial court are properly classified as "preparation for litigation," they do not rise to the level of "significant." Woodruff failed to carry her burden of proof on the second *Northland* factor.

¶ 32 Woodruff fairs no better with regard to the third *Northland* factor: "whether the trial date is near or there has been a long delay in raising the issue of contractual arbitration rights." It is undisputed the trial date was not near when Appellants moved to compel arbitration. It was early in the litigation and the trial court had yet to issue a scheduling order or set a date for trial. As for whether there had been a "long delay in raising the issue of contractual arbitration rights," the trial court declared "Willco's delay in seeking to compel arbitration was not a long delay." Despite this finding, the trial court described the delay as "indicative of actions inconsistent with the right to arbitrate," even though inconsistency with arbitration is the focus of the first *Northland* factor, not the third. Moreover, the anti-waiver provision of the parties' Agreement declares "[f]ailure by any Party to enforce or exercise rights under this Agreement ... shall not affect the right of any Party to exercise or enforce any such

---

15. Unlike in *Northland,* it was Woodruff, the party opposing arbitration, not Appellants, the parties seeking arbitration, who moved for summary judgment in this case. We cannot charge Woodruff's summary judgment motion against Appellants in determining whether Appellants waived their contractual right to arbitrate.

16. Woodruff has pointed to no Oklahoma authority in support of her premise that a party waives its contractual right to arbitration by failing to move to compel arbitration and stay proceedings immediately upon filing a foreclosure petition, particularly where, as here, foreclosure actions are expressly permitted by the parties' arbitration clause and excluded from waiver by the terms of their agreement.

rights or require such performance at any time thereafter." Because the trial date was not near, Appellants' delay in raising the issue of contractual arbitration rights was not long, and the parties agreed to an anti-waiver provision, Woodruff failed to satisfy the third prong of the *Northland* analysis.

¶ 33 The fourth factor examines "whether the party invoking the arbitration right has filed pleadings in the litigation without seeking a stay of the proceedings." As discussed in examining the second factor above, because the arbitration provision of the parties' Agreement expressly permits actions in foreclosure, there was no reason for Willco to provide notice of arbitration to Woodruff or seek a stay of proceedings upon initiating this lawsuit. While it may be true, as the trial court concluded, that the parties, taken together, performed "substantial work" before the trial court, this finding is unresponsive to the fourth *Northland* factor. The fourth factor focuses solely on "the party invoking the arbitration right," not the party opposing it.

¶ 34 As discussed in response to the first factor above, with the exception of Willco's initial pleading (a foreclosure petition specifically allowed by the parties' Agreement) and the one set of discovery requests Appellants served on Woodruff, all of the remaining documents Appellants filed with the trial court were responsive in nature, undertaken in direct reaction to Woodruff's pleadings and discovery requests. Aside from Willco's initial petition, Appellants neither filed offensive pleadings nor requested summary judgment prior to seeking a stay of proceedings upon moving to compel arbitration June 20, 2008.[17] For these reasons, we find Woodruff has failed to satisfy the fourth *Northland* prong.

¶ 35 For the fifth (formerly sixth) and final *Northland* factor, we must determine "whether the opposing party has been prejudiced by the delay." In its order denying Appellants' motion to compel arbitration, the trial court found Woodruff made "no showing

... that ... a substantial prejudice [would be] visited upon [her] if arbitration were compelled—whatever prejudice there might be to Woodruff is slight since work that has been performed would be performed in arbitration." We agree with the trial court and find Woodruff has failed to show she would suffer any prejudice if Appellants compelled arbitration in this case.

### Conclusion

¶ 36 We find Woodruff failed to satisfy any of the five *Northland* factors that survive under the New Act. In light of this finding and the fact waiver of contractual arbitration provisions is not easily inferred,[18] we hold Appellants' actions before the trial court were insufficient to waive their right to compel arbitration of Woodruff's counterclaims and third-party claims. We reverse the order of the trial court.

¶ 37 REVERSED.

JOPLIN, P.J., and BELL, V.C.J., concur.

---

17. Citing *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir.1994), the Court in *Towe, Hester, & Erwin* listed the fourth *Northland* factor as "whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings." *Towe, Hester, & Erwin, Inc.*, ¶ 24, 947 P.2d at 599; *see also Gish*, ¶ 26, 162 P.3d at 230 (same).

18. *See Northland*, ¶ 7, 897 P.2d at 1162.